# EXHIBIT 1

## AGREEMENT

THIS AGREEMENT made and entered into this 27th day of April, 2004, by and between International Casings Group, Inc. an Illinois corporation qualified to do business in the state of Missouri hereinafter referred to as "I.C.G." and Premium Standard Farms, Inc. a Delaware corporation with a slaughter house located in Milan, Missouri,. party of the second part hereinafter referred to as, "Premium".

**WITNESSETH:**

**WHEREAS**, Casing Co. desires to secure a source of supply of hog casings.

**WHEREAS**, Premium being in the pork slaughtering business desires to sell its hog casings.

**NOW, THEREFORE**, in consideration of the premises and in consideration of the mutual covenants hereinafter expressed, the parties do hereby covenant and agree as follows:

1. <u>Agreement and Subject Matter of Sale.</u>  Premium agrees to sell to I.C.G., and I.C.G. agrees to purchase from Premium, upon and subject to the various terms and conditions that are herein contained, the following:

1.1  All the casings, produced by Premium at its plant in Milan, Missouri, for the duration of the term of this Agreement.

2.  <u>Additional Premium Obligations.</u>  In addition to Premium's obligations to sell the casings to I.C.G. Premium agrees to do the following:

A. Deliver all casings to Casing Co's. cleaning department in good condition.

Case 4:04-cv-01081-NKL   Document 1-1   Filed 11/30/04   Page 2 of 83
Initials TS [    ]   RM [    ]

B. Supply adequate and suitable U.S.D.A. approved space for the cleaning of casings, the storage of casings, storage for spare parts, and a supervisor's office. Premium hereby grants I.C.G. a license to use such space during the term of this Agreement and upon the termination or expiration of this Agreement such license shall immediately cease and terminate and I.C.G. shall have a period of ten (10) days after such termination or expiration within which to remove it's equipment.

C. Supply all necessary water at proper temperatures and pressure to clean casings and operate the casing cleaning machinery, sewage and electricity to insure proper cleaning of the casings.
    Specifically:
        1. A constant supply of warm water at 105 F plus or minus 2 F to maintain proper adjustment of machines for the proper cleaning of casings.
        2. Cool water of 70 F or lower for the finishing of casings.
        3. Chilled water of 45 F or lower for the soaking of casings.
        4. The pressure of the water should be great enough to prevent excessive wrap-ups on the casing cleaning machines.

D. Provide such number of employees (other than the casing supervisor and assistant) as may be specified by I.C.G., to produce the casings at wages equal to Premium's other employees with similar job skills.  I.C.G. shall have the right to discipline up to and including discharge, using Premium's guidelines as to disciplinary and discharge procedures.  Premium's human relations or personnel

director will be included in the above procedure.

    1. Premium agrees that employee roster of I.C.G. will not be used as a labor pool for other departments and will use it's best efforts to encourage all employees in Casing Co's department to remain as such, subject to applicable laws and Premium employment policies.

E. Premium will supply all maintenance personnel upon request from I.C.G. to perform certain maintenance and repair operations in I.C.G.'s department and to invoice I.C.G. for the actual hourly cost of such maintenance personnel.   I.C.G. agrees to pay these expenses within 30 days from date of invoice.

F. Accept and transfer all edible/inedible by-products from I.C.G. casing table and provide a conveyance system for removing these products.

G. Premium will make available to I.C.G., upon their request, all accounting information relating to the casing operation.  Such information shall include, but is not limited to, employee records, payroll figures, daily kill figures, daily condemnation figures and weekly average weights for hogs slaughtered that week.

H. Premium will provide sanitation of the casing department and related areas.

I. Premium will comply with all laws and regulations, including, but not limited to OSHA, ADA and will defend and indemnify I.C.G. against any claims by Premium

employees unless due to gross negligence by I.C.G. employees or their agents.

3.   Additional I.C.G. Obligations.   In addition to I.C.G.'s obligations to purchase the casings and to pay the purchase price therefor, I.C.G. agrees to do the following:

A. Provide and maintain two lines of machines and equipment for the cleaning of the casings and pumps for the saving of mucosa. It is expressly understood that all such machines and equipment purchased by I.C.G. shall remain the sole property of I.C.G.

B. Reimburse Premium for the cost of all gross wages including, without limitation, all vacation pay, retirement benefits, health insurance costs and other employee benefits which accrue subsequent to this agreement and are payable with respect to the employees that they provide to I.C.G.. I.C.G. will inform Premium the number of employees that is required to operate the casing saving operation.

C. Supply all necessary materials for the casings operation such as salt, drums and poly liners.

D. Supply and maintain an adequate inventory of spare parts for the casing machines.

E. Ship the casings and bear the expense related thereto.

F. I.C.G. will perform a daily dry pick-up of the casing area however Premium will be responsible for daily sanitation.

Case 4:04-cv-01081-NKL   Document 1-1   Filed 11/30/04   Page 5 of 83

Initials TS [    ]   RM [    ]

G. I.C.G. agrees to design and operate the casing lines and related equipment in accordance with all applicable laws, rules and regulations, including, without limitation all regulations of OSHA.

H. I.C.G. will make available to Premium, upon their request, all accounting information relating to the casing operation.

## 4. Payment for Casings.

4.1   Payment for casings shall be based upon the current top side market prices as reflected in the Monday Pratt report for all production that week. The schedule for the payment is reflected in the attachment marked Exhibit 1 and is incorporated herein by reference.

4.2   I.C.G. will make payment for casings to Premium based on the prior week's casings transferred to I.C.G. at the Milan plant location as calculated pursuant to section 4.3 and 4.4 below.  Said payment shall be made within seven (7) days from receipt of the billing for prior week's casings.

4.3   I.C.G. will pay based on a floating percentage rate of the gross kill as reported by Premium.  Such percentage rate shall be determined by taking the percentage of condemned and adding three percent (3%).  i.e.. if the condemned is 7 percent average for the week then I.C.G. would pay based on ninety percent (90%) of the gross kill during that week.

4.4   Both I.C.G. and Premium realize that the casing cleaning lines can only clean a maximum of 1,000 casings per hour.  In consideration of this fact the maximum quantity (count) that

Premium can bill I.C.G. is 1,000 casings per hour regardless of actual count.

5.   Utilities.   I.C.G. agrees to exercise its best efforts to minimize water, sewage and electrical usage and shall conduct it's operations in a commercially reasonable manner.

6.   Term.   This Agreement is for an initial term of five years which automatically renews for successive one (1) year terms unless a termination notice is delivered by one party to the other a minimum of ninety (90) days prior to the expiration of a term.   The initial term shall commence February 15th, 2003.   This agreement supersedes and replaces in its entirety, that previous agreement dated August 18th, 1997 dealing with the subject matter described herein, which agreement is hereby terminated.

7.   Insurance.   Each company agrees to maintain such insurance as will fully protect itself from any and all claims under any Workmen's Compensation Act or Employer's Liability Laws, and from any and all other claims of whatsoever kind or nature from damages to property or for personal injury, including death, made by anyone whatsoever, that may result from operations pursuant to this Agreement.   Notwithstanding the foregoing, I.C.G. shall, at a minimum, obtain and maintain during the term of this agreement commercial general liability insurance, with general aggregate coverage of $5,000,000.00 and covering personal injury or death, property damage and products liability.   Premium shall be named as an additional insured under such policy or policies.

8.   Force Majeure and Miscellaneous.

   8.1   Premium shall not be deemed to have failed to perform hereunder if Premium's inability to produce and deliver the

casings shall have been caused by an event or events beyond Premium's reasonable control, such events to include (without limitation) fire, flood, explosion, strikes, labor disputes, vandalism, civil riots or commotion's, the inability of Premium to procure and process necessary livestock, or the like. Upon the cessation of any cause operating to excuse performance hereby by Premium, this Agreement shall continue in full force and effect until either performed or terminated in accordance with the provisions hereof.

8.2   I.C.G. shall not be deemed to have failed to perform hereunder if I.C.G.'s inability to process the casings shall have been caused by an event or events beyond Casings Co.'s reasonable control, such events to include (without limitation) fire, flood, explosions, strikes, labor disputes, vandalism, civil riots or commotion's, or the like. Upon the cessation of any cause operating to excuse performance hereby by I.C.G., this Agreement shall continue in full force and effect until either performed or terminated in accordance with the provisions hereof.

9.   <u>Default and Remedies.</u>

9.1   <u>Premium.</u>   Premium shall be in default hereunder if it shall breach any of the warranties herein advanced by it or if it shall fail to perform in any material respect and such breach or failure shall continue for a period of 30 days following the receipt of written notice from I.C.G. specifying such breach or default. The 30 days shall start from the date that the defaulting party receives written notice from the non-defaulting party.

Case 4:04-cv-01081-NKL   Document 1-1   Filed 11/30/04   Page 8 of 83

9.2  <u>I.C.G.</u>  I.C.G. shall be in default hereunder if it shall fail to accept delivery of the casings properly delivered hereunder, if it shall fail to pay the purchase price due for the casings properly sold hereunder or if it shall fail to pay the actual cost of employees, or if it shall otherwise fail to perform hereunder or under the Confidentiality Agreement between the parties in any material respect and such breach or failure shall continue for a period of 30 days following the receipt of written notice from Premium specifying such breach or default.  The 30 days shall start from the date that the defaulting party receives written notice from the non-defaulting party.

9.3  <u>Remedies.</u>  In the event of a default by either of the parties hereto, the other (i.e., the non-defaulting) party shall be entitled to (1) terminate this Agreement and (2) recover from the defaulting party whatever damages it shall rightfully be entitled to under applicable provisions of governing law.

10.  <u>Indemnification to Premium.</u>  The entities comprising I.C.G. shall jointly and severally defend, indemnify and hold harmless Premium and it's affiliates and their respective officers, directors, general partners and employees from and against any claims, suits, demands, damages (excluding, however all consequential damages), liabilities, costs and expenses, including, without limitation, attorney's fees, collectively the "liabilities" arising out of or in connection with I.C.G.'s performance or failure of performance hereunder including, without limitation any liabilities arising from or attributed to the casings processed hereunder and any act or omission of I.C.G. and it's employees and

Case 4:04-cv-01081-NKL    Document 1-1    Filed 11/30/04    Page 9 of 83

Initials TS [    ]    RM [    ]

agents.

     10.1   <u>Indemnification to I.C.G.</u>  Premium shall defend, indemnify and hold harmless the entities comprising I.C.G. and it's affiliates and their respective officers, directors, and employees from and against any claims, suits, demands, damages (excluding, however all consequential damages), liabilities, costs and expenses, including, without limitation, attorney's fees, collectively the "liabilities" arising out of or in connection with Premium's performance or failure of performance hereunder, including, without limitation any liabilities arising from or attributed to the casings processed hereunder and any act or omission of Premium and it's employees and agents.

11.  <u>Entire Agreement.</u>  This Agreement and that certain Confidentiality Agreement between the parties contains the entire agreement of the parties with respect to its subject matter. No modification or waiver of any provision shall be valid unless in writing signed by the parties to be bound.

12.  <u>Waiver.</u>  The failure of any party hereto in any one or more instances to insist upon the performance of any of the terms or conditions of this Agreement, or to exercise any right or privilege conferred in this Agreement, or the waiver of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as thereafter waiving any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

13.  <u>Invalid Provision.</u>  The invalidity or unenforceability of any

particular provision of this Agreement shall not effect the other provisions of this Agreement, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

14. **Captions.** The captions of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement for purposes of interpretation or construction.

15. **Counterparts.** This Agreement shall be executed in several counterparts, each of which shall be deemed to be an original instrument.

16. **Successors and Assigns.** This Agreement shall be binding on, and shall inure to the benefit of, both Premium and I.C.G., their respective successors in interest and assigns.

17. **Notices.** All notices required to be given hereunder shall be in writing, and shall be deemed sufficiently given when either personally delivered to an officer of Premium or I.C.G., or when mailed, certified mail, postage prepaid, and addressed as follows:

If to Premium:        Premium Standard Farms, Inc.
                                     Attention: Robert W. Manly
                                     423 West 8th Street
                                     Kansas City, MO 64105

If to I.C.G.:        International Casings Group, Inc.
                                     Attention: Tom Sanecki

Case 4:04-cv-01081-NKL    Document 1-1    Filed 11/30/04    Page 11 of 83

Initials TS [   ]    RM [   ]

4420 South Wolcott Avenue

Chicago, IL  60609

or at such other address or addresses as may hereafter be furnished in writing by either party to the other.


18.  <u>Controlling Law.</u>  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Missouri, including, without limitation, the Uniform Commercial Code, as the same is in force in the State of Missouri.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement and affixed their seals thereto the day and year first above written

International Casings Group, Inc.
"I.C.G."

by:_____
     Tom Sanecki, President

Premium Standard Foods, Inc.
"Premium"

by:_____
     Robert W. Manly, President

Case 4:04-cv-01081-NKL   Document 1-1   Filed 11/30/04   Page 12 of 83

# EXHIBIT 2

# AGREEMENT

THIS AGREEMENT made and entered into this 27th day of April, 2004, by and between International Casings Group, Inc. an Illinois corporation qualified to do business in the state of North Carolina, hereinafter referred to as "I.C.G." and Premium Standard Farms, Inc. a Delaware corporation with a slaughter house located in Clinton, North Carolina,. party of the second part hereinafter referred to as, "Premium".

**WITNESSETH:**

**WHEREAS,** Casing Co. desires to secure a source of supply of hog casings.

**WHEREAS,** Premium being in the pork slaughtering business desires to sell its hog casings.

**NOW, THEREFORE,** in consideration of the premises and in consideration of the mutual covenants hereinafter expressed, the parties do hereby covenant and agree as follows:

1. <u>Agreement and Subject Matter of Sale.</u> Premium agrees to sell to I.C.G., and I.C.G. agrees to purchase from Premium, upon and subject to the various terms and conditions that are herein contained, the following:

   1.1 All the casings, produced by Premium at its plant in Clinton, North Carolina, for the duration of the term of this Agreement.

2. <u>Additional Premium Obligations.</u> In addition to Premium's obligations to sell the casings to I.C.G. Premium agrees to do the following:

I.C.G./PREMIUM Clinton Contract April 27, 2004          Page 1 of 12

Initials

TS ☐     RM ☐

A. Deliver all casings to Casing Co's. cleaning department in good condition.

B. Provide to I.C.G. as provided in paragraph 3.B hereafter adequate and suitable U.S.D.A. approved space for cleaning, storage (including storage for spare parts), an office, as well as lockers and bathroom facilities for employees of I.C.G. I.C.G. agrees that the casing facility and space for cleaning, storage and office space described on Exhibit 1 hereof is suitable and adequate. I.C.G. further agrees that Premium will be entitled to enter such space at all times; provided, that Premium shall use its best effort to minimize interference with I.C.G.'s operations therein.

C. Supply all necessary water at proper temperatures and pressure to clean casings and operate the casing cleaning machinery, sewage and electricity to insure proper cleaning of the casings.
  Specifically:
    1. Warm water between 100F and 115F for the proper cleaning of casings.
    2. Cool water of 70 F or lower for the finishing of casings.
    3. The pressure of the water should be great enough to prevent excessive wrap-ups on the casing cleaning machines.

D. Premium will supply all maintenance personnel upon request from I.C.G. to perform certain maintenance and repair operations in I.C.G.'s department and to invoice I.C.G. for the actual hourly cost of such maintenance personnel. I.C.G. agrees to pay these expenses within 30 days from date of invoice.

E. Accept and transfer all edible/inedible by-products from I.C.G. casing table and provide a conveyance system for removing these products.

F. Premium will make available to I.C.G., upon their request, all accounting information relating to the casing operation. Such information shall include, but is not limited to, daily kill figures, daily condemnation figures and weekly average weights for hogs slaughtered that week.

G. Premium will comply with all laws and regulations, including, but not limited to OSHA, ADA and will defend and indemnify I.C.G. against any claims by Premium employees unless due to gross negligence by I.C.G. employees or their agents.

3. <u>Additional I.C.G. Obligations.</u> In addition to I.C.G.'s obligations to purchase the casings and to pay the purchase price therefor, I.C.G. agrees to do the following:

I.C.G./PREMIUM Clinton Contract April 27, 2004 Page 3 of 12

A. Provide and maintain two lines of machines and equipment for the cleaning of the casings and pumps for the saving of mucosa. It is expressly understood that all such machines and equipment purchased by I.C.G. shall remain the sole property of I.C.G.

B. Utilize the existing casings building. Maintenance to the building, the utilities provided to the building such as electricity, gas, water and sewerage will be provided by Premium. There is a limit on the amount of water, which I.C.G. will use under this agreement. If I.C.G. uses more than 8 gallons of water per paid casing then Premium will charge I.C.G. $16.50 per 1,000 gallons of water over the 8 gallon limit. This calculation will be made on a weekly basis Monday through Sunday.

C. Supply all necessary materials for the casings operation such as salt, drums and poly liners.

D. Supply and maintain an adequate inventory of spare parts for the casing machines.

E. Ship the casings and bear the expense related thereto.

F. Provide sanitation of the casing department, all areas leased by I.C.G. hereunder, and the exterior of and immediate fenced in grounds around all such areas.

G. I.C.G. agrees to design and operate the casing lines and

Case 4:04-cv-01081-NKL    Document 1-1    Filed 11/30/04    Page 17 of 83
TS [    ]    RM [    ]

related equipment in accordance with all applicable laws, rules and regulations, including, without limitation all regulations of OSHA.

H. I.C.G. will make available to Premium, upon their request, all accounting information relating to the casing operation.

## 4. Payment for Casings.

4.1 Payment for casings shall be based upon the current top side market prices as reflected in the Monday Pratt report for all production that week. The schedule for the payment is reflected in the attachment marked Exhibit 2 and is incorporated herein by reference.

4.2 I.C.G. will make payment for casings to Premium based on the prior week's casings transferred to I.C.G. at the Clinton plant location as calculated pursuant to section 4.3 and 4.4 below. Said payment shall be made within seven (7) days from receipt of the billing for prior week's casings.

4.3 I.C.G. agrees to pay Premium for casings as set forth in Exhibit 2. The billing rate will be calculated as ninety (90%) percent of the daily kill (as supplied by Premium), which sum will be reduced if the average weekly condemned percentage rate exceeds ten (10%) percentage of the kill, or for any product Premium fails to deliver to I.C.G.

Case 4:04-cv-01081-NKL     Document 3-1     Filed 11/30/04     Page 18 of 83

Initials

TS [     ]     RM [     ]

4.4   Both I.C.G. and Premium realize that the casing cleaning lines can only clean a maximum of 1000 casings per hour. In consideration of this fact the maximum quantity (count) that Premium can bill I.C.G. is 1000 casings per hour regardless of actual count.

5.   Utilities.   I.C.G. agrees to exercise its best efforts to minimize water, sewage and electrical usage and shall conduct its operations in a commercially reasonable manner.

6.   Term.   This Agreement is for an initial term of five (5) years, which automatically renews for successive one (1) year terms unless a termination notice is delivered by one party to the other a minimum of ninety (90) days prior to the expiration of a term.   The initial term shall commence April 27th, 2004.   This agreement supersedes and replaces in its entirety, that previous agreement dated August 1st, 1998 dealing with the subject matter described herein, which agreement is hereby terminated.

7.   Insurance.   Each company agrees to maintain such insurance as will fully protect itself from any and all claims under any Workmen's Compensation Act or Employer's Liability Laws, and from any and all other claims of whatsoever kind or nature from damages to property or for personal injury, including death, made by anyone whatsoever, that may result from operations pursuant to this Agreement.   Notwithstanding the foregoing, I.C.G. shall, at a minimum, obtain and maintain during the term of this agreement commercial general liability insurance, with general aggregate coverage of $5,000,000.00 and covering personal injury or death, property damage and products liability.   Premium shall be named as

I.C.G./PREMIUM Clinton Contract April 27, 2004          Page 6 of 12

an additional insured under such policy or policies.

8. <u>Force Majeure and Miscellaneous.</u>

8.1 Premium shall not be deemed to have failed to perform hereunder if Premium's inability to produce and deliver the casings shall have been caused by an event or events beyond Premium's reasonable control, such events to include (without limitation) fire, flood, explosion, strikes, labor disputes, vandalism, civil riots or commotion's, the inability of Premium to procure and process necessary livestock, or the like. Upon the cessation of any cause operating to excuse performance hereby by Premium, this Agreement shall continue in full force and effect until either performed or terminated in accordance with the provisions hereof.

8.2 I.C.G. shall not be deemed to have failed to perform hereunder if I.C.G.'s inability to process the casings shall have been caused by an event or events beyond Casings Co.'s reasonable control, such events to include (without limitation) fire, flood, explosions, strikes, labor disputes, vandalism, civil riots or commotion's, or the like. Upon the cessation of any cause operating to excuse performance hereby by I.C.G., this Agreement shall continue in full force and effect
until either performed or terminated in accordance with the provisions hereof.

9. <u>Default and Remedies.</u>

Case 4:04-cv-01081-NKL    Document 1-1    Filed 11/30/04    Page 20 of 83

9.1  **Premium.**  Premium shall be in default hereunder if it shall breach any of the warranties herein advanced by it or if it shall fail to perform in any material respect and such breach or failure shall continue for a period of 30 days following the receipt of written notice from I.C.G. specifying such breach or default.  The 30 days shall start from the date that the defaulting party receives written notice from the non-defaulting party.

9.2  **I.C.G.**  I.C.G. shall be in default hereunder if it shall fail to accept delivery of the casings properly delivered hereunder, if it shall fail to pay the purchase price due for the casings properly sold hereunder or if it shall fail to pay the actual cost of employees, or if it shall otherwise fail to perform hereunder or under the Confidentiality Agreement between the parties in any material respect and such breach or failure shall continue for a period of 30 days following the receipt of written notice from Premium specifying such breach or default.  The 30 days shall start from the date that the defaulting party receives written notice from the non-defaulting party.

9.3  **Remedies.**  In the event of a default by either of the parties hereto, the other (i.e., the non-defaulting) party shall be entitled to (1) terminate this Agreement and (2) recover from the defaulting party whatever damages it shall rightfully be entitled to under applicable provisions of governing law.

Initials
TS [    ]      RM [    ]

10. <u>Indemnification to Premium.</u>  The entities comprising I.C.G. shall jointly and severally defend, indemnify and hold harmless Premium and it's affiliates and their respective officers, directors, general partners and employees from and against any claims, suits, demands, damages (excluding, however all consequential damages), liabilities, costs and expenses, including, without limitation, attorney's fees, collectively the "liabilities" arising out of or in connection with I.C.G.'s performance or failure of performance hereunder including, without limitation any liabilities arising from or attributed to the casings processed hereunder and any act or omission of I.C.G. and it's employees and agents.

10.1  <u>Indemnification to I.C.G.</u>  Premium shall defend, indemnify and hold harmless the entities comprising I.C.G. and it's affiliates and their respective officers, directors, and employees from and against any claims, suits, demands, damages (excluding, however all consequential damages), liabilities, costs and expenses, including, without limitation, attorney's fees, collectively the "liabilities" arising out of or in connection with Premium's performance or failure of performance hereunder, including, without limitation any liabilities arising from or attributed to the casings processed hereunder and any act or omission of Premium and its employees and agents.

11. <u>Entire Agreement.</u>  This Agreement and that certain Confidentiality Agreement between the parties contains the entire agreement of the parties with respect to its subject matter. No

Initials
Case 4:04-cv-01081-NKL    Document 1-1    Filed 11/30/04    Page 22 of 83
TS        RM

modification or waiver of any provision shall be valid unless in writing signed by the parties to be bound.

12. <u>Waiver.</u>  The failure of any party hereto in any one or more instances to insist upon the performance of any of the terms or conditions of this Agreement, or to exercise any right or privilege conferred in this Agreement, or the waiver of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as thereafter waiving any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

13. <u>Invalid Provision.</u>  The invalidity or unenforceability of any particular provision of this Agreement shall not effect the other provisions of this Agreement, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

14. <u>Captions.</u>  The captions of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement for purposes of interpretation or construction.

15. <u>Counterparts.</u>  This Agreement shall be executed in several counterparts, each of which shall be deemed to be an original instrument.

16. <u>Successors and Assigns.</u>  This Agreement shall be binding on,

and shall inure to the benefit of, both Premium and I.C.G., their respective successors in interest and assigns.

17. <u>Notices.</u> All notices required to be given hereunder shall be in writing, and shall be deemed sufficiently given when either personally delivered to an officer of Premium or I.C.G., or when mailed, certified mail, postage prepaid, and addressed as follows:

If to Premium:        Premium Standard Farms, Inc.
                                   Attention:  Robert W. Manly
                                   423 West 8th Street
                                   Kansas City, MO  64105

If to I.C.G.:        International Casings Group, Inc.
                                   Attention:  Tom Sanecki
                                   4420 South Wolcott Avenue
                                   Chicago, IL  60609

or at such other address or addresses as may hereafter be furnished in writing by either party to the other.

18. <u>Controlling Law.</u> This Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina, including, without limitation, the Uniform Commercial Code, as the same is in force in the State of North Carolina.

I.C.G./PREMIUM Clinton Contract April 27, 2004      Page 11 of 12

Initials
TS [        ]    RM [        ]

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement and affixed their seals thereto the day and year first above written

International Casings Group, Inc.
"I.C.G."

by:_____
Tom Sanecki, President


Premium Standard Foods, Inc.
"Premium"

by:_____
Robert W. Manly, President

# EXHIBIT 3

**From:**    Pummill, Kent [Kent.Pummill@psfarms.com]

**Sent:**    Monday, June 21, 2004 3:10 PM

**To:**      Tom Sanecki

**Subject:** RE: Contracts

That is fine.

-----Original Message-----
**From:** Tom Sanecki [mailto:tsanecki@casings.com]
**Sent:** Monday, June 21, 2004 3:06 PM
**To:** Pummill, Kent
**Subject:** RE: Contracts

Shall we make these prices effective 06/28/04?

-----Original Message-----
**From:** Pummill, Kent [mailto:Kent.Pummill@psfarms.com]
**Sent:** Monday, June 21, 2004 2:58 PM
**To:** Tom Sanecki
**Subject:** RE: Contracts

We will mark up the contract and send it to you.    Thanks,   Kent

Send me a new pricing schedule,  and I will attach the new one to Clinton's contracts.

-----Original Message-----
**From:** Tom Sanecki [mailto:tsanecki@casings.com]
**Sent:** Monday, June 21, 2004 2:38 PM
**To:** Pummill, Kent
**Subject:** RE: Contracts

OK, but as you can imagine I am surprised by this change.  Do you want to mark-up your contract and mark the price schedule, then sign and send to me. We will get the blow pipe done ASAP.  Thanks

-----Original Message-----
**From:** Pummill, Kent [mailto:Kent.Pummill@psfarms.com]
**Sent:** Monday, June 07, 2004 10:04 AM
**To:** Tom Sanecki
**Subject:** Contracts

Finally got them back from Legal and Bo Manly.

Every thing looks fine except on 2 G.    Jerry wants to have 2G end with "ADA".   and mark through the following.

" and will defend and indemnify ICG against any claims by Premium employees unless due to gross negligence by ICG employees or their agents."

He says this is covered in 10.

Bo,  is adamant about not going 5 years.     He turned 180 degrees on me.   He wants just 3.    If you can agree with me on 3 years, then I will mark through and initial the "2G" section,  and change and initial the term to 3 years,  and get Bo to sign and send them on their way.

I thought we were home free;  we are real close.   Will this work for you?   I will take another penny off the price for Clinton to get this signed and off my desk.   I think you and I are both tired and want this off our desks.

Let me know.

Kent

# EXHIBIT 4

# AGREEMENT

THIS AGREEMENT made and entered into this 18th day of August, 1997, by and between International Casings Group, Inc. an Illinois corporation qualified to do business in the state of Missouri hereinafter referred to as "I.C.G." and Premium Standard Farms, Inc. a Missouri corporation with a slaughter house located in Milan, Missouri, . party of the second part hereinafter referred to as, "Premium".

**WITNESSETH:**

**WHEREAS,** Casing Co. desires to secure a source of supply of hog casings and mucosa.

**WHEREAS,** Premium being in the pork slaughtering business desires to sell its hog casings and mucosa.

**NOW, THEREFORE,** in consideration of the premises and in consideration of the mutual covenants hereinafter expressed, the parties do hereby covenant and agree as follows:

1. <u>Agreement and Subject Matter of Sale.</u>  Premium agrees to sell to I.C.G., and I.C.G. agrees to purchase from Premium, upon and subject to the various terms and conditions that are herein contained, the following:

1.1  All the casings, including the mucosa therein, produced by Premium at its plant in Milan, Missouri, for the duration of the term of this Agreement.

2. <u>Additional Premium Obligations.</u>  In addition to Premium's obligations to sell the casings and the mucosa therein to I.C.G. Premium agrees to do the following:

A. Premium will install at their expense under the direction of I.C.G. two new casing cleaning lines and related mucosa collecting equipment as supplied by I.C.G. including all electrical and plumbing hook-ups. I.C.G. will pay the true cost of installation not to exceed $20,000.00 (Twenty thousand dollars). Payment will be made within 15 days after the lines and equipment are installed.

B. Deliver all casings to Casing Co's. cleaning department in good condition.

C. Supply adequate and suitable U.S.D.A. approved space for the cleaning of casings, the storage of casings, storage for spare parts, and a supervisor's office. Premium hereby grants I.C.G. a license to use such space during the term of this Agreement and upon the termination or expiration of this Agreement such license shall immediately cease and terminate and I.C.G. shall have a period of ten (10) days after such termination or expiration within which to remove it's equipment.

D. Supply all necessary water at proper temperatures and pressure to clean casings and operate the casing cleaning machinery, sewage and electricity to insure proper cleaning of the casings.

Specifically:

1. A constant supply of warm water at 105 F plus or minus 2 F to maintain proper adjustment of machines for the proper cleaning of casings.

2. Cool water of 70 F or lower for the finishing of casings.

3. Chilled water of 45 F or lower for the soaking of casings.

4. The pressure of the water should be great enough to prevent excessive wrap-ups on the casing cleaning machines.

Case 4:04-cv-01081-NKL     Document 1-1     Filed 11/30/04     Page 31 of 83

E.  Provide such number of employees (other than the casing supervisor and assistant) as may be specified by I.C.G., to produce the casings and mucosa at wages equal to Premium's other employees with similar job skills.  I.C.G. shall have the right to discipline up to and including discharge, using Premium's guidelines as to disciplinary and discharge procedures.  Premium's human relations or personnel director will be included in the above procedure.

　　1.  Premium agrees that employee roster of I.C.G. will not be used as a labor pool for other departments and will use it's best efforts to encourage all employees in Casing Co's department to remain as such, subject to applicable laws and Premium employment policies.

F.  Premium will supply all maintenance personnel upon request from I.C.G. to perform certain maintenance and repair operations in I.C.G.'s department and to invoice I.C.G. for the actual hourly cost of such maintenance personnel.  I.C.G. agrees to pay these expenses within 30 days from date of invoice.

G.  Accept and transfer all edible/inedible by-products from I.C.G. casing table and provide a conveyance system for removing these products.

H.  Premium will make available to I.C.G., upon their request, all accounting information relating to the casing operation.  Such information shall include, but is not limited to, Employee records, daily kill figures, daily condemnation figures and weekly average weights for hogs slaughtered that week.

I.  Premium will provide space to park a tank trailer on a continuous basis for collection and shipment to the mucosa customer.

J.  Premium will provide sanitation of the casing department and related areas.

K.  Premium will comply with all laws and regulations, including, but not limited to OSHA, ADA and will defend and indemnify I.C.G. against any claims by Premium employees unless due

to gross negligence by I.C.G. employees or their agents.

3. <u>Additional I.C.G. Obligations.</u>  In addition to I.C.G.'s obligations to purchase the casings, including the mucosa therein, and to pay the purchase price therefor, I.C.G. agrees to do the following:

A.  Purchase and maintain the two new lines of machines and equipment for the cleaning of the casings and pumps for the saving of mucosa.  It is expressly understood that all such machines and equipment purchased by I.C.G. pursuant to this Agreement, shall remain the sole property of I.C.G.

B.  Reimburse Premium for the cost of all gross wages including, without limitation, all vacation pay, retirement benefits, health insurance costs and other employee benefits which accrue subsequent to this agreement and are payable with respect to the employees that they provide to I.C.G..  I.C.G. will inform Premium the number of employees that is required to operate the casing saving operation.

C.  Supply all necessary materials for the casings operation such as salt, drums and poly liners and sodium bisulfite for the preservation of the mucosa.

D.  Sell and invoice and collect revenue for the mucosa.

E.  Supply and maintain an adequate inventory of spare parts for the casing machines.

F.  Ship the casings and mucosa and bear the expense related thereto.

G.  I.C.G. will perform a daily dry pick-up of the casing area however Premium will be responsible for daily sanitation.

H.  I.C.G. agrees to design and operate the casing lines and related equipment in accordance with all applicable laws, rules and regulations, including, without limitation all regulations of OSHA.

I.  I.C.G. shall make available to Premium, upon it's request, all books and records of I.C.G. relating to the processing and sale

Case 4:04-cv-01081-NKL     Document 1-1     Filed 11/30/04     Page 33 of 83

of mucosa originating from Premium's Milan, Missouri plant to allow Premium to verify and confirm Casing Co's payment obligations hereunder.

4. <u>Payment for Casings and Mucosa.</u>

4.1  Payment for casings and mucosa shall be based upon the current top side market prices as reflected in the Monday Pratt report for all production that week and the current market price for mucosa as reflected by purchase orders given by the mucosa buyer.  The payment as shown in the payment matrix is subject to modification due to the average weight of the hogs killed that week.  The schedule for the payment and modification are reflected in two attachments marked exhibits 1 and 2 and incorporated herein by reference.

4.2  I.C.G. will make payment for casings to Premium based on the prior week's casings transferred to I.C.G. at the Milan plant location as calculated pursuant to section 4.3 and 4.4 below.  Said payment shall be made within seven (7) days from receipt of the billing for prior week's casings.

4.3  I.C.G. will pay based on a floating percentage rate of the gross kill as reported by Premium.  Such percentage rate shall be determined by taking the percentage of condemned and adding three percent (3%).  ie.. if the condemned is 7 percent average for the week then I.C.G. would pay based on ninety percent (90%) of the gross kill during that week.

4.4  Both I.C.G. and Premium realize that the proposed casing cleaning lines can only clean a maximum of 1000 casings per hour. In consideration of this fact the maximum quantity (count) that Premium can bill I.C.G. is 1000 casings per hour regardless of actual count.

5. <u>Utilities.</u>  I.C.G. agrees to exercise its best efforts to minimize water, sewage and electrical usage and shall conduct it's operations in a commercially reasonable manner.

Case 4:04-cv-01081-NKL     Document 1-1     Filed 11/30/04     Page 34 of 83

6. <u>Term.</u>  This Agreement is for an initial term of five years which automatically renews for successive one (1) year terms unless a termination notice is delivered by one party to the other a minimum of ninety (90) days prior to the expiration of a term.  The initial term shall commence upon the start-up of the new casing cleaning equipment.  This agreement supersedes and replaces in its entirety, that previous agreement dated September 9, 1994 dealing with the subject matter described herein, which agreement is hereby terminated.

7. <u>Insurance.</u>  Each company agrees to maintain such insurance as will fully protect itself from any and all claims under any Workmen's Compensation Act or Employer's Liability Laws, and from any and all other claims of whatsoever kind or nature from damages to property or for personal injury, including death, made by anyone whatsoever, that may result from operations pursuant to this Agreement.  Notwithstanding the foregoing, I.C.G. shall, at a minimum, obtain and maintain during the term of this agreement commercial general liability insurance, with general aggregate coverage of $5,000,000.00 and covering personal injury or death, property damage and products liability.  Premium shall be named as an additional insured under such policy or policies.

8. <u>Force Majeure and Miscellaneous.</u>
8.1  Premium shall not be deemed to have failed to perform hereunder if Premium's inability to produce and deliver the casings and mucosa shall have been caused by an event or events beyond Premium's reasonable control, such events to include (without limitation) fire, flood, explosion, strikes, labor disputes, vandalism, civil riots or commotions, the inability of Premium to procure and process necessary livestock, or the like.  Upon the cessation of any cause operating to excuse performance hereby by Premium, this Agreement shall continue in full force and effect

Case 4:04-cv-01081-NKL     Document 1-1     Filed 11/30/04     Page 35 of 83

until either performed or terminated in accordance with the provisions hereof.

8.2 I.C.G. shall not be deemed to have failed to perform hereunder if I.C.G.'s inability to process the casings and mucosa shall have been caused by an event or events beyond Casings Co.'s reasonable control, such events to include (without limitation) fire, flood, explosions, strikes, labor disputes, vandalism, civil riots or commotions, or the like. Upon the cessation of any cause operating to excuse performance hereby by I.C.G., this Agreement shall continue in full force and effect until either performed or terminated in accordance with the provisions hereof.

9. Default and Remedies.

9.1 Premium. Premium shall be in default hereunder if it shall breach any of the warranties herein advanced by it or if it shall fail to perform in any material respect and such breach or failure shall continue for a period of 30 days following the receipt of written notice from I.C.G. specifying such breach or default. The 30 days shall start from the date that the defaulting party receives written notice from the non-defaulting party.

9.2 I.C.G. I.C.G. shall be in default hereunder if it shall fail to accept delivery of the casings and mucosa properly delivered hereunder, if it shall fail to pay the purchase price due for the casings and mucosa properly sold hereunder or if it shall fail to pay the actual cost of employees, or if it shall otherwise fail to perform hereunder or under the Confidentiality Agreement between the parties in any material respect and such breach or failure shall continue for a period of 30 days following the receipt of written notice from Premium specifying such breach or default. The 30 days shall start from the date that the defaulting party receives written notice from the non-defaulting party.

9.3  <u>Remedies.</u>  In the event of a default by either of the parties hereto, the other (i.e., the non-defaulting) party shall be entitled to (1) terminate this Agreement and (2) recover from the defaulting party whatever damages it shall rightfully be entitled to under applicable provisions of governing law.

10.  <u>Indemnification to Premium.</u>  The entities comprising I.C.G. shall jointly and severally defend, indemnify and hold harmless Premium and it's affiliates and their respective officers, directors, general partners and employees from and against any claims, suits, demands, damages (excluding, however all consequential damages), liabilities, costs and expenses, including, without limitation, attorney's fees, collectively the "liabilities" arising out of or in connection with I.C.G.'s performance or failure of performance hereunder including, without limitation any liabilities arising from or attributed to the casings and mucosa processed hereunder and any act or omission of I.C.G. and it's employees and agents.

10.1  <u>Indemnification to I.C.G.</u>  Premium shall defend, indemnify and hold harmless the entities comprising I.C.G. and it's affiliates and their respective officers, directors, and employees from and against any claims, suits, demands, damages (excluding, however all consequential damages), liabilities, costs and expenses, including, without limitation, attorney's fees, collectively the "liabilities" arising out of or in connection with Premium's performance or failure of performance hereunder, including, without limitation any liabilities arising from or attributed to the casings and mucosa processed hereunder and any act or omission of Premium and it's employees and agents.

11.  <u>Entire Agreement.</u>  This Agreement and that certain Confidentiality Agreement between the parties contains the entire agreement of the parties with respect to its subject matter. No

Case 4:04-cv-01081-NKL     Document 1-1     Filed 11/30/04     Page 37 of 83

modification or waiver of any provision shall be valid unless in writing signed by the parties to be bound.

12. <u>Waiver.</u> The failure of any party hereto in any one or more instances to insist upon the performance of any of the terms or conditions of this Agreement, or to exercise any right or privilege conferred in this Agreement, or the waiver of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as thereafter waiving any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

13. <u>Invalid Provision.</u> The invalidity or unenforceability of any particular provision of this Agreement shall not effect the other provisions of this Agreement, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

14. <u>Captions.</u> The captions of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement for purposes of interpretation or construction.

15. <u>Counterparts.</u> This Agreement shall be executed in several counterparts, each of which shall be deemed to be an original instrument.

16. <u>Successors and Assigns.</u> This Agreement shall be binding on, and shall inure to the benefit of, both Premium and I.C.G., their respective successors in interest and assigns.

17.  <u>Notices.</u>  All notices required to be given hereunder shall be in writing, and shall be deemed sufficiently given when either personally delivered to an officer of Premium or I.C.G., or when mailed, certified mail, postage prepaid, and addressed as follows:

If to Premium:              Premium Standard Farms, Inc.
                            Attention:  Robert W. Manly
                            423 West 8th Street
                            Kansas City, MO  64105

If to I.C.G.:               International Casings Group, Inc.
                            Attention:  Eric Svendsen
                            1846 South Loomis Street
                            P. O. Box 08142
                            Chicago, IL  60608-0142

or at such other address or addresses as may hereafter be furnished in writing by either party to the other.

18. <u>Controlling Law.</u> This Agreement shall be governed by and interpreted in accordance with the laws of the State of Missouri, including, without limitation, the Uniform Commercial Code, as the same is in force in the State of Missouri.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement and affixed their seals thereto the day and year first above written

International Casings Group, Inc.
"I.C.G."

by:_____
        Eric Svendsen, President


Premium Standard Foods, Inc.
"Premium"

by:_____
        Robert W. Manly, President

 

INTERNATIONAL CASINGS GROUP, INC.

FACTORY & EXECUTIVE OFFICES:
P.O. BOX 08142; CHICAGO, IL 60608
312/421-5234; USA 800-825-5151
FAX 312/421-5798;
INTERNET WWW. CASINGS.COM

## EXHIBIT 2

May 28, 1997

Modifying schedule for payments to Premium based on the weekly average live weights of the hogs killed.

If hogs killed live weight is:

245 pounds up to 249 pounds.........................add $0.08 to the payment schedule
250 pounds up to 254 pounds.........................add $0.05 to the payment schedule
255 pounds up to 259 pounds.........................add $0.03 to the payment schedule

260 pounds up to 270 pounds.........................no adjustment to the payment schedule

270 pounds up to 274 pounds.........................deduct $0.03 from the payment schedule
275 pounds up to 280 pounds.........................deduct $0.05 from the payment schedule
281 pounds and over......................................deduct $0.08 from the payment schedule

Exhibit 1  May 28, 1997

**Premium Standard Farms**

−18¢ ↓

**Mucosa and Strings Price per Pound**

| High Pratt Report Price | $0.045 | $0.050 | $0.055 | $0.060 | $0.065 | $0.070 | $0.075 | $0.080 | $0.085 | $0.090 | $0.095 | $0.100 | $0.105 | $0.110 | $0.115 | $0.120 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $0.40 | $0.1115 | $0.1200 | $0.1285 | $0.1370 | $0.1455 | $0.1540 | $0.1625 | $0.1710 | $0.1795 | $0.1880 | $0.1965 | $0.2050 | $0.2135 | $0.2220 | $0.2305 | $0.2390 |
| $0.41 | $0.1215 | $0.1300 | $0.1385 | $0.1470 | $0.1555 | $0.1640 | $0.1725 | $0.1810 | $0.1895 | $0.1980 | $0.2065 | $0.2150 | $0.2235 | $0.2320 | $0.2405 | $0.2490 |
| $0.42 | $0.1315 | $0.1400 | $0.1485 | $0.1570 | $0.1655 | $0.1740 | $0.1825 | $0.1910 | $0.1995 | $0.2080 | $0.2165 | $0.2250 | $0.2335 | $0.2420 | $0.2505 | $0.2590 |
| $0.43 | $0.1415 | $0.1500 | $0.1585 | $0.1670 | $0.1755 | $0.1840 | $0.1925 | $0.2010 | $0.2095 | $0.2180 | $0.2265 | $0.2350 | $0.2435 | $0.2520 | $0.2605 | $0.2690 |
| $0.44 | $0.1515 | $0.1600 | $0.1685 | $0.1770 | $0.1855 | $0.1940 | $0.2025 | $0.2110 | $0.2195 | $0.2280 | $0.2365 | $0.2450 | $0.2535 | $0.2620 | $0.2705 | $0.2790 |
| $0.45 | $0.1615 | $0.1700 | $0.1785 | $0.1870 | $0.1955 | $0.2040 | $0.2125 | $0.2210 | $0.2295 | $0.2380 | $0.2465 | $0.2550 | $0.2635 | $0.2720 | $0.2805 | $0.2890 |
| $0.46 | $0.1715 | $0.1800 | $0.1885 | $0.1970 | $0.2055 | $0.2140 | $0.2225 | $0.2310 | $0.2395 | $0.2480 | $0.2565 | $0.2650 | $0.2735 | $0.2820 | $0.2905 | $0.2990 |
| $0.47 | $0.1815 | $0.1900 | $0.1985 | $0.2070 | $0.2155 | $0.2240 | $0.2325 | $0.2410 | $0.2495 | $0.2580 | $0.2665 | $0.2750 | $0.2835 | $0.2920 | $0.3005 | $0.3090 |
| $0.48 | $0.1915 | $0.2000 | $0.2085 | $0.2170 | $0.2255 | $0.2340 | $0.2425 | $0.2510 | $0.2595 | $0.2680 | $0.2765 | $0.2850 | $0.2935 | $0.3020 | $0.3105 | $0.3190 |
| $0.49 | $0.2015 | $0.2100 | $0.2185 | $0.2270 | $0.2355 | $0.2440 | $0.2525 | $0.2610 | $0.2695 | $0.2780 | $0.2865 | $0.2950 | $0.3035 | $0.3120 | $0.3205 | $0.3290 |
| $0.50 | $0.2115 | $0.2200 | $0.2285 | $0.2370 | $0.2455 | $0.2540 | $0.2625 | $0.2710 | $0.2795 | $0.2880 | $0.2965 | $0.3050 | $0.3135 | $0.3220 | $0.3305 | $0.3390 |
| $0.51 | $0.2215 | $0.2300 | $0.2385 | $0.2470 | $0.2555 | $0.2640 | $0.2725 | $0.2810 | $0.2895 | $0.2980 | $0.3065 | $0.3150 | $0.3235 | $0.3320 | $0.3405 | $0.3490 |
| $0.52 | $0.2315 | $0.2400 | $0.2485 | $0.2570 | $0.2655 | $0.2740 | $0.2825 | $0.2910 | $0.2995 | $0.3080 | $0.3165 | $0.3250 | $0.3335 | $0.3420 | $0.3505 | $0.3590 |
| $0.53 | $0.2415 | $0.2500 | $0.2585 | $0.2670 | $0.2755 | $0.2840 | $0.2925 | $0.3010 | $0.3095 | $0.3180 | $0.3265 | $0.3350 | $0.3435 | $0.3520 | $0.3605 | $0.3690 |
| $0.54 | $0.2515 | $0.2600 | $0.2685 | $0.2770 | $0.2855 | $0.2940 | $0.3025 | $0.3110 | $0.3195 | $0.3280 | $0.3365 | $0.3450 | $0.3535 | $0.3620 | $0.3705 | $0.3790 |
| $0.55 | $0.2615 | $0.2700 | $0.2785 | $0.2870 | $0.2955 | $0.3040 | $0.3125 | $0.3210 | $0.3295 | $0.3380 | $0.3465 | $0.3550 | $0.3635 | $0.3720 | $0.3805 | $0.3890 |
| $0.56 | $0.2715 | $0.2800 | $0.2885 | $0.2970 | $0.3055 | $0.3140 | $0.3225 | $0.3310 | $0.3395 | $0.3480 | $0.3565 | $0.3650 | $0.3735 | $0.3820 | $0.3905 | $0.3990 |
| $0.57 | $0.2815 | $0.2900 | $0.2985 | $0.3070 | $0.3155 | $0.3240 | $0.3325 | $0.3410 | $0.3495 | $0.3580 | $0.3665 | $0.3750 | $0.3835 | $0.3920 | $0.4005 | $0.4090 |
| $0.58 | $0.2915 | $0.3000 | $0.3085 | $0.3170 | $0.3255 | $0.3340 | $0.3425 | $0.3510 | $0.3595 | $0.3680 | $0.3765 | $0.3850 | $0.3935 | $0.4020 | $0.4105 | $0.4190 |
| $0.59 | $0.3015 | $0.3100 | $0.3185 | $0.3270 | $0.3355 | $0.3440 | $0.3525 | $0.3610 | $0.3695 | $0.3780 | $0.3865 | $0.3950 | $0.4035 | $0.4120 | $0.4205 | $0.4290 |
| $0.60 | $0.3115 | $0.3200 | $0.3285 | $0.3370 | $0.3455 | $0.3540 | $0.3625 | $0.3710 | $0.3795 | $0.3880 | $0.3965 | $0.4050 | $0.4135 | $0.4220 | $0.4305 | $0.4390 |
| $0.61 | $0.3215 | $0.3300 | $0.3385 | $0.3470 | $0.3555 | $0.3640 | $0.3725 | $0.3810 | $0.3895 | $0.3980 | $0.4065 | $0.4150 | $0.4235 | $0.4320 | $0.4405 | $0.4490 |
| $0.62 | $0.3315 | $0.3400 | $0.3485 | $0.3570 | $0.3655 | $0.3740 | $0.3825 | $0.3910 | $0.3995 | $0.4080 | $0.4165 | $0.4250 | $0.4335 | $0.4420 | $0.4505 | $0.4590 |
| $0.63 | $0.3415 | $0.3500 | $0.3585 | $0.3670 | $0.3755 | $0.3840 | $0.3925 | $0.4010 | $0.4095 | $0.4180 | $0.4265 | $0.4350 | $0.4435 | $0.4520 | $0.4605 | $0.4690 |
| $0.64 | $0.3515 | $0.3600 | $0.3685 | $0.3770 | $0.3855 | $0.3940 | $0.4025 | $0.4110 | $0.4195 | $0.4280 | $0.4365 | $0.4450 | $0.4535 | $0.4620 | $0.4705 | $0.4790 |
| $0.65 | $0.3615 | $0.3700 | $0.3785 | $0.3870 | $0.3955 | $0.4040 | $0.4125 | $0.4210 | $0.4295 | $0.4380 | $0.4465 | $0.4550 | $0.4635 | $0.4720 | $0.4805 | $0.4890 |
| $0.66 | $0.3715 | $0.3800 | $0.3885 | $0.3970 | $0.4055 | $0.4140 | $0.4225 | $0.4310 | $0.4395 | $0.4480 | $0.4565 | $0.4650 | $0.4735 | $0.4820 | $0.4905 | $0.4990 |
| $0.67 | $0.3815 | $0.3900 | $0.3985 | $0.4070 | $0.4155 | $0.4240 | $0.4325 | $0.4410 | $0.4495 | $0.4580 | $0.4665 | $0.4750 | $0.4835 | $0.4920 | $0.5005 | $0.5090 |
| $0.68 | $0.3915 | $0.4000 | $0.4085 | $0.4170 | $0.4255 | $0.4340 | $0.4425 | $0.4510 | $0.4595 | $0.4680 | $0.4765 | $0.4850 | $0.4935 | $0.5020 | $0.5105 | $0.5190 |
| $0.69 | $0.4015 | $0.4100 | $0.4185 | $0.4270 | $0.4355 | $0.4440 | $0.4525 | $0.4610 | $0.4695 | $0.4780 | $0.4865 | $0.4950 | $0.5035 | $0.5120 | $0.5205 | $0.5290 |
| $0.70 | $0.4115 | $0.4200 | $0.4285 | $0.4370 | $0.4455 | $0.4540 | $0.4625 | $0.4710 | $0.4795 | $0.4880 | $0.4965 | $0.5050 | $0.5135 | $0.5220 | $0.5305 | $0.5390 |
| $0.71 | $0.4215 | $0.4300 | $0.4385 | $0.4470 | $0.4555 | $0.4640 | $0.4725 | $0.4810 | $0.4895 | $0.4980 | $0.5065 | $0.5150 | $0.5235 | $0.5320 | $0.5405 | $0.5490 |
| $0.72 | $0.4315 | $0.4400 | $0.4485 | $0.4570 | $0.4655 | $0.4740 | $0.4825 | $0.4910 | $0.4995 | $0.5080 | $0.5165 | $0.5250 | $0.5335 | $0.5420 | $0.5505 | $0.5590 |
| $0.73 | $0.4415 | $0.4500 | $0.4585 | $0.4670 | $0.4755 | $0.4840 | $0.4925 | $0.5010 | $0.5095 | $0.5180 | $0.5265 | $0.5350 | $0.5435 | $0.5520 | $0.5605 | $0.5690 |



Exhibit 1   May 28, 1997

## Premium Standard Farms

### Mucosa and Strings Price per Pound

| High Pratt Report Price | $0.045 | $0.050 | $0.055 | $0.060 | $0.065 | $0.070 | $0.075 | $0.080 | $0.085 | $0.090 | $0.095 | $0.100 | $0.105 | $0.110 | $0.115 | $0.120 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $0.74 | $0.3565 | $0.3650 | $0.3735 | $0.3820 | $0.3905 | $0.3990 | $0.4075 | $0.4160 | $0.4245 | $0.4330 | $0.4415 | $0.4500 | $0.4585 | $0.4670 | $0.4755 | $0.4840 |
| $0.75 | $0.3640 | $0.3725 | $0.3810 | $0.3895 | $0.3980 | $0.4065 | $0.4150 | $0.4235 | $0.4320 | $0.4405 | $0.4490 | $0.4575 | $0.4660 | $0.4745 | $0.4830 | $0.4915 |
| $0.76 | $0.3715 | $0.3800 | $0.3885 | $0.3970 | $0.4055 | $0.4140 | $0.4225 | $0.4310 | $0.4395 | $0.4480 | $0.4565 | $0.4650 | $0.4735 | $0.4820 | $0.4905 | $0.4990 |
| $0.77 | $0.3790 | $0.3875 | $0.3960 | $0.4045 | $0.4130 | $0.4215 | $0.4300 | $0.4385 | $0.4470 | $0.4555 | $0.4640 | $0.4725 | $0.4810 | $0.4895 | $0.4980 | $0.5065 |
| $0.78 | $0.3865 | $0.3950 | $0.4035 | $0.4120 | $0.4205 | $0.4290 | $0.4375 | $0.4460 | $0.4545 | $0.4630 | $0.4715 | $0.4800 | $0.4885 | $0.4970 | $0.5055 | $0.5140 |
| $0.79 | $0.3940 | $0.4025 | $0.4110 | $0.4195 | $0.4280 | $0.4365 | $0.4450 | $0.4535 | $0.4620 | $0.4705 | $0.4790 | $0.4875 | $0.4960 | $0.5045 | $0.5130 | $0.5215 |
| $0.80 | $0.4015 | $0.4100 | $0.4185 | $0.4270 | $0.4355 | $0.4440 | $0.4525 | $0.4610 | $0.4695 | $0.4780 | $0.4865 | $0.4950 | $0.5035 | $0.5120 | $0.5205 | $0.5290 |
| $0.81 | $0.4090 | $0.4175 | $0.4260 | $0.4345 | $0.4430 | $0.4515 | $0.4600 | $0.4685 | $0.4770 | $0.4855 | $0.4940 | $0.5025 | $0.5110 | $0.5195 | $0.5280 | $0.5365 |
| $0.82 | $0.4165 | $0.4250 | $0.4335 | $0.4420 | $0.4505 | $0.4590 | $0.4675 | $0.4760 | $0.4845 | $0.4930 | $0.5015 | $0.5100 | $0.5185 | $0.5270 | $0.5355 | $0.5440 |
| $0.83 | $0.4240 | $0.4325 | $0.4410 | $0.4495 | $0.4580 | $0.4665 | $0.4750 | $0.4835 | $0.4920 | $0.5005 | $0.5090 | $0.5175 | $0.5260 | $0.5345 | $0.5430 | $0.5515 |
| $0.84 | $0.4315 | $0.4400 | $0.4485 | $0.4570 | $0.4655 | $0.4740 | $0.4825 | $0.4910 | $0.4995 | $0.5080 | $0.5165 | $0.5250 | $0.5335 | $0.5420 | $0.5505 | $0.5590 |
| $0.85 | $0.4415 | $0.4500 | $0.4585 | $0.4670 | $0.4755 | $0.4840 | $0.4925 | $0.5010 | $0.5095 | $0.5180 | $0.5265 | $0.5350 | $0.5435 | $0.5520 | $0.5605 | $0.5690 |
| $0.86 | $0.4515 | $0.4600 | $0.4685 | $0.4770 | $0.4855 | $0.4940 | $0.5025 | $0.5110 | $0.5195 | $0.5280 | $0.5365 | $0.5450 | $0.5535 | $0.5620 | $0.5705 | $0.5790 |
| $0.87 | $0.4615 | $0.4700 | $0.4785 | $0.4870 | $0.4955 | $0.5040 | $0.5125 | $0.5210 | $0.5295 | $0.5380 | $0.5465 | $0.5550 | $0.5635 | $0.5720 | $0.5805 | $0.5890 |
| $0.88 | $0.4715 | $0.4800 | $0.4885 | $0.4970 | $0.5055 | $0.5140 | $0.5225 | $0.5310 | $0.5395 | $0.5480 | $0.5565 | $0.5650 | $0.5735 | $0.5820 | $0.5905 | $0.5990 |
| $0.89 | $0.4815 | $0.4900 | $0.4985 | $0.5070 | $0.5155 | $0.5240 | $0.5325 | $0.5410 | $0.5495 | $0.5580 | $0.5665 | $0.5750 | $0.5835 | $0.5920 | $0.6005 | $0.6090 |
| $0.90 | $0.4915 | $0.5000 | $0.5085 | $0.5170 | $0.5255 | $0.5340 | $0.5425 | $0.5510 | $0.5595 | $0.5680 | $0.5765 | $0.5850 | $0.5935 | $0.6020 | $0.6105 | $0.6190 |
| $0.91 | $0.5015 | $0.5100 | $0.5185 | $0.5270 | $0.5355 | $0.5440 | $0.5525 | $0.5610 | $0.5695 | $0.5780 | $0.5865 | $0.5950 | $0.6035 | $0.6120 | $0.6205 | $0.6290 |
| $0.92 | $0.5115 | $0.5200 | $0.5285 | $0.5370 | $0.5455 | $0.5540 | $0.5625 | $0.5710 | $0.5795 | $0.5880 | $0.5965 | $0.6050 | $0.6135 | $0.6220 | $0.6305 | $0.6390 |
| $0.93 | $0.5215 | $0.5300 | $0.5385 | $0.5470 | $0.5555 | $0.5640 | $0.5725 | $0.5810 | $0.5895 | $0.5980 | $0.6065 | $0.6150 | $0.6235 | $0.6320 | $0.6405 | $0.6490 |
| $0.94 | $0.5315 | $0.5400 | $0.5485 | $0.5570 | $0.5655 | $0.5740 | $0.5825 | $0.5910 | $0.5995 | $0.6080 | $0.6165 | $0.6250 | $0.6335 | $0.6420 | $0.6505 | $0.6590 |
| $0.95 | $0.5415 | $0.5500 | $0.5585 | $0.5670 | $0.5755 | $0.5840 | $0.5925 | $0.6010 | $0.6095 | $0.6180 | $0.6265 | $0.6350 | $0.6435 | $0.6520 | $0.6605 | $0.6690 |
| $0.96 | $0.5515 | $0.5600 | $0.5685 | $0.5770 | $0.5855 | $0.5940 | $0.6025 | $0.6110 | $0.6195 | $0.6280 | $0.6365 | $0.6450 | $0.6535 | $0.6620 | $0.6705 | $0.6790 |
| $0.97 | $0.5615 | $0.5700 | $0.5785 | $0.5870 | $0.5955 | $0.6040 | $0.6125 | $0.6210 | $0.6295 | $0.6380 | $0.6465 | $0.6550 | $0.6635 | $0.6720 | $0.6805 | $0.6890 |
| $0.98 | $0.5715 | $0.5800 | $0.5885 | $0.5970 | $0.6055 | $0.6140 | $0.6225 | $0.6310 | $0.6395 | $0.6480 | $0.6565 | $0.6650 | $0.6735 | $0.6820 | $0.6905 | $0.6990 |
| $0.99 | $0.5815 | $0.5900 | $0.5985 | $0.6070 | $0.6155 | $0.6240 | $0.6325 | $0.6410 | $0.6495 | $0.6580 | $0.6665 | $0.6750 | $0.6835 | $0.6920 | $0.7005 | $0.7090 |
| $1.00 | $0.5915 | $0.6000 | $0.6085 | $0.6170 | $0.6255 | $0.6340 | $0.6425 | $0.6510 | $0.6595 | $0.6680 | $0.6765 | $0.6850 | $0.6935 | $0.7020 | $0.7105 | $0.7190 |



# EXHIBIT 5

# AGREEMENT

THIS AGREEMENT made and entered into this 1st day of August 1998, by and between International Casing Group, an Illinois corporation qualified to do business in North Carolina, party of the first part, hereinafter referred to as "ICG", and The Lundy Packing Company, located in Clinton, North Carolina, party of the second part, hereinafter referred to as "Lundy".

**WITNESSETH:**

**WHEREAS,** ICG desires to secure a source of supply of hog casings and mucosa.

**WHEREAS,** Lundy being in the pork slaughtering business desires to sell its hog casings and mucosa.

**NOW, THEREFORE,** in consideration of the premises and in consideration of the mutual covenants hereinafter expressed, the parties do hereby covenant and agree as follows:

1.    <u>Agreement and Subject Matter of Sale.</u>  Lundy agrees to sell to ICG, and ICG agrees to purchase from Lundy, upon and subject to the various terms and conditions that are herein contained, all the casings (small intestines) produced by Lundy at its plant in Clinton, North Carolina, for the duration of the term of this Agreement.

2.    <u>Additional Lundy Obligations.</u>  In addition to Lundy's obligations to sell the casings to ICG [and to lease certain equipment and premises], Lundy agrees to do the following:

2.1    Lease to ICG as provided in paragraph 3.2 hereafter adequate and suitable U.S.D.A. approved space for cleaning, storage (including storage for spare parts) an office, as well as lockers and bathroom facilities for employees of ICG.  ICG agrees that the casing facility and space for cleaning, storage and office space described on Exhibit 1 hereof is suitable and adequate.  ICG further agrees that Lundy will be entitled to enter such space at all times; provided, that Lundy shall use its best efforts to minimize interference with ICG's operations therein.

2.2    Supply all necessary water, sewage and electricity to insure proper cleaning of the casings.  In view of such undertaking by Lundy, Lundy shall have the right to approve in advance (prior to use by ICG) all chemicals utilized by ICG in its activities at Lundy's facilities, such approval not to be unreasonably withheld. Specifically:

1.    Supply warm water between 95°F and 110°F for the proper cleaning of casings.

2.    Supply cool water of 70°F or lower for the finishing of casings.

3.    Supply water pressure of 40 psi.

2.3     Supply maintenance personnel upon request from ICG to perform certain maintenance and repair operations to the casing cleaning equipment for which Lundy shall bill ICG and ICG shall pay actual labor hours at $35.00/hour and Lundy parts at Lundy cost plus ten percent (10%) for delivery and handling.

2.4     Accept and transfer all edible/inedible by-products from ICG and provide a conveyance system for removing these products. Lundy retains ownership of all such by-products.

2.5     Lundy will make available to ICG, upon their request, all accounting information relating to the casing operation. Such information shall include, but is not limited to, daily kill figures, daily condemnation figures and weekly average weights for hogs slaughtered that week.

3.     Additional ICG Obligations.  In addition to ICG's obligations to purchase the casings and to pay the purchase price therefore, ICG agrees to do the following:

3.1     On or before February 1st, 1999, to install and maintain two new casing cleaning lines and equipment for the cleaning of the casings. It is expressly understood that all such machines and equipment shall become the sole property of Lundy if ICG continues to purchase casings from Lundy hereunder for the next 8 years. If, at the end of 8 years, the contract between Lundy and ICG is renewed, then ICG will have the option to install new equipment or use the existing equipment and machinery rent free.

3.2     In addition, ICG will lease from Lundy the existing building where the Lundy casing cleaning machinery and equipment are located. The monthly rent for the leased space will be $1,000.00 and will be payable to Lundy in advance on the 1st day of each month. ICG agrees that Lundy will be entitled to enter all such leased space at all times, provided that Lundy will use its best efforts to minimize interference with ICG's operations therein. The utilities provided to the building such as electricity, gas, water and sewerage will all be provided by Lundy, except that if ICG uses more than 8 gallons of water per paid casing then Lundy will charge ICG $16.50 per 1,000 gallons of water over the 8 gallon limit. This calculation will be made on a weekly basis Monday through Sunday.

3.3     Supply adequate labor to operate the casing saving operation and maintain the casing cleaning machines.

3.4     Supply all necessary materials for the casings operation such as salt, drums and liners.

3.5     Supply all necessary labor to collect and preserve the mucosa.

3.6     Supply and maintain an adequate inventory of spare parts for the casing cleaning lines.

3.7     Ship the casings and bear the expense related thereto.

3.8    Provide sanitation of the casing department, all areas leased by ICG hereunder, and the exterior of and immediate fenced in grounds around all such areas.

3.9    Accept all non-condemned casings produced by Lundy at all times that the Lundy hog slaughter facility is in operation at the Clinton plant location.

3.10    Until new equipment is installed, ICG will lease the current equipment set forth on Exhibit 2 hereof. The monthly rent for such leased equipment will be $250 and will be payable on the 1st day of each month. ICG will be responsible for the removal of old equipment from the rented property to a location specified by Lundy on Lundy's property.

3.11    Maintain, at its expense, all leased premises and equipment in their current condition as of August 1, 1998.

3.12    Pay within 7 days after the date of invoices received from Lundy all charges hereunder for Lundy personnel, labor and equipment.

4.    Payment for Casings and Mucosa.

4.1    Payments for casings shall be based upon current top side market prices as reflected in the Monday Pratt Report for all production for that week. This is subject to a graduated payment, however, and is reflected in an attachment marked Exhibit 3 and incorporated herein by reference.

4.2    ICG will make payment for casings to Lundy based on the prior week's casings transferred to ICG at the Clinton plant location. Said payment shall be made within seven (7) days from receipt of the billing for prior week's casings.

4.3    ICG agrees to pay Lundy for the casings as set forth in Exhibit 3. The billing rate will be calculated as ninety (90%) percent of the daily kill (as supplied by Lundy), which sum will be reduced if the average weekly condemned percentage rate exceeds ten (10%) percent of the kill, or for any product Lundy fails to deliver to ICG.

4.4    ICG guarantees a minimum Heparin yield on Mucosa of 0.041 Mega per paid casing after the installation of its new equipment. If Heparin output falls below 0.041 Mega per paid casing, Lundy shall bill ICG and ICG shall pay the difference between the guaranteed amount (0.041 Mega) and actual amount extended by the current Heparin contract price.

5.    Utilities.  ICG agrees to exercise its best efforts to minimize water, sewage and electrical usage. As mentioned in paragraph 3.2. above, ICG will pay for excess water usage.

6.    Term.  This Agreement is for an initial term of four years, unless earlier terminated as provided herein.  This Agreement automatically renews for a two year term unless a notice of intent not to renew is delivered by either party to the other a minimum of ninety (90) days prior to the expiration of a term.  The initial term shall commence on August 1, 1998.                              *Aug1 2002*

7.    Insurance.

7.1    ICG agrees to maintain comprehensive general liability insurance, as well as product liability in the minimum amount of ONE MILLION ($1,000,000) DOLLARS for claims arising out of bodily injury and ONE HUNDRED THOUSAND ($100,000) DOLLARS for property damage, plus a supplemental umbrella policy of an additional FIVE MILLION ($5,000,000) DOLLARS.

7.2    ICG also agrees to maintain such insurance as will fully protect itself from any and all claims under any Workmen's Compensation Act or Employer's Liability Laws, and from any and all other claims of whatsoever kind or nature from damages to property or for personal injury, including death, made by anyone whatsoever, that may result from operations pursuant to this Agreement.

7.3    Lundy agrees to maintain property insurance on the rented facility and equipment owned by Lundy.

7.4    Each party shall provide a certificate of insurance evidencing such coverage to the other party upon its request.

8.    Force Majeure and Miscellaneous.

8.1    Lundy shall not be deemed to have failed to perform hereunder if Lundy's inability to produce and deliver the casings and mucosa shall have been caused by an event or events beyond Lundy's reasonable control, such events to include (without limitation) fire, flood, explosion, strikes, labor disputes, vandalism, civil riots or commotions, the inability of Lundy to procure necessary livestock, or the like.  Upon the cessation of any cause operating to excuse performance hereby by Lundy, this Agreement shall continue in full force and effect until either performed or terminate in accordance with the provisions hereof.  However, if Lundy is unable or unwilling to recommence performance within thirty (30) days of such cessation, this Agreement shall terminate at the option of ICG upon delivery by it of written notice to Lundy of the exercise of such option.

8.2    ICG shall not be deemed to have failed to perform hereunder if ICG's inability to process the casings and mucosa shall have been caused by an event or events beyond ICG's reasonable control, such events to include (without limitation) fire, flood, explosions, strikes, labor disputes, vandalism, civil riots or commotions, or the like.  Upon the cessation of any cause operating to excuse performance hereby by ICG, this Agreement shall continue in full force and effect until either performed or terminated in accordance with the provisions hereof.  However, if ICG is unable or unwilling to recommence performance within thirty (30) days of such cessation, this Agreement shall terminate at the option of Lundy upon delivery by it of written notice to ICG of the exercise of such option.

9.     <u>Default and Remedies.</u>

      9.1    <u>ICG.</u> ICG shall be in default hereunder if it shall fail to accept delivery of the casings properly delivered hereunder, if it shall fail to pay the purchase price due for the casings properly sold hereunder or if it shall fail to pay when due any other amount required hereunder.

      9.2    <u>Lundy.</u> Lundy shall be in default hereunder if it shall breach any of the warranties herein advanced by it or if it shall fail to perform in any material respect and such failure continues for a period of 10 days after receipt of written notice thereof by ICG.

      9.3    ICG shall be in default hereunder if it shall otherwise fail to perform in any material respect and such failure continues for a period of 10 days after receipt of written notice thereof by Lundy.

    10.    <u>Specific Performance.</u> In the event of any actual or threatened default in or breach of any of the terms, conditions and provisions of this Agreement, the party of parties who are thereby aggrieved shall have the right to specific performance or injunction in addition to any and all remedies at law or equity, and all such rights and remedies shall be cumulative.

      10.1   <u>Remedies.</u> In the event of a default by either of the parties hereto, the other (i.e., the non-defaulting) party shall be entitled to (1) terminate this Agreement and (2) recover from the defaulting party whatever damages it shall rightfully be entitled to under applicable provisions of governing law.

      10.2   <u>Indemnification of Lundy.</u> ICG shall defend, indemnify and hold harmless Lundy from and against any claims, suits, demands, damages, liabilities, costs and expenses, including, without limitation, attorney's fees, arising out of or in connection with ICG's performance or failure of performance hereunder.

      10.3   <u>Indemnification of ICG.</u> Lundy shall defend, indemnify and hold harmless ICG from and against any claims, suits, demands, damages, liabilities, costs and expenses, including, without limitation, attorney's fees, arising out of or in connection with Lundy's performance or failure of performance hereunder.

    11.    <u>Entire Agreement.</u> This Agreement contains the entire agreement of the parties with respect to its subject matter. No modification or waiver of any provision shall be valid unless in writing signed by the parties to be bound.

    12.    <u>Waiver.</u> The failure of any party hereto in any one or more instances to insist upon the performance of any of the terms or conditions of this Agreement, or to exercise any right or privilege conferred in this Agreement, or the waiver of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as thereafter waiving any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

13.  Invalid Provision.  The invalidity or unenforceability of any particular provision of this Agreement shall not effect the other provisions of this Agreement, and this Agreement shall be construed in all respect as if such invalid or unenforceable provisions were omitted.

14.  Captions.  The captions of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement for purposes of interpretation or construction.

15.  Counterparts.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original instrument.

16.  Successors and Assigns.  This Agreement shall be binding on, and shall insure to the benefit of, both Lundy and ICG, their respective successors in interest and assigns.

17.  Notices.  All notices required to be given hereunder shall be in writing, and shall be deemed sufficiently given when either personally delivered to an officer of Lundy or ICG, or when mailed, certified mail, postage prepaid, and addressed as follows:

        If to Lundy:        The Lundy Packing Company
                             Attn:  Dr. Lewis M. Fetterman, Jr.
                             P. O. Box 49
                             Clinton, North Carolina  28329-0049

        If to ICG:         International Casing Group
                             Attn:  Mr. Eric Svendsen
                             P. O. Box 08142
                             Chicago, Illinois  60608

or at such other address or addresses as may hereafter be furnished in writing by either party to the other.

18.  Controlling Law.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of North Carolina.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement and affixed their seals thereto the day and year first above written.

International Casing Group

By:_____
       Eric Svendsen, President


The Lundy Packing Company

By:_____
       Dr. Lewis M. Fetterman, Jr., President

ICGagree/work



# EXHIBIT 1
## FACILITY DESCRIPTION

# EXHIBIT 2
## CASING/MUCOSA EQUIPMENT LIST

2 - 1200 AB Stridhs 1200 lines

1 - Mucosa Pump and Tank (500 gal) with aggitator

1 - Salt Table and Roller - Manual

1 - Counter Tub

1 - Finisher

1 - Canvas Roller

1 - Stripper Crusher

1 - Stripper

1 - Soak Tub

1 - Mucosa Tank

This makes up a 1200 AB Stridhs line.

14 - Pulling Trays

1 - Dock Board

1 - 6" Wiler Grinder

1 - 2 L6 Mono Pump

# EXHIBIT 3
## THE LUNDY PACKING COMPANY PAYMENT SCHEDULE

| Topside Pratt Hog Runner* | Payment To Lundy /Casing | | Topside Pratt Hog Runner* | Payment To Lundy /Casing |
|---|---|---|---|---|
| $0.40 | $0.3275 | | $0.70 | $0.4400 |
| $0.41 | $0.3275 | | $0.71 | $0.4475 |
| $0.42 | $0.3275 | | $0.72 | $0.4550 |
| $0.43 | $0.3275 | | $0.73 | $0.4625 |
| $0.44 | $0.3275 | | $0.74 | $0.4700 |
| $0.45 | $0.3275 | | $0.75 | $0.4775 |
| $0.46 | $0.3275 | | $0.76 | $0.4850 |
| $0.47 | $0.3275 | | $0.77 | $0.4925 |
| $0.48 | $0.3275 | | $0.78 | $0.5000 |
| $0.49 | $0.3275 | | $0.79 | $0.5075 |
| $0.50 | $0.3275 | | $0.80 | $0.5150 |
| $0.51 | $0.3325 | | $0.81 | $0.5225 |
| $0.52 | $0.3375 | | $0.82 | $0.5300 |
| $0.53 | $0.3425 | | $0.83 | $0.5375 |
| $0.54 | $0.3475 | | $0.84 | $0.5450 |
| $0.55 | $0.3525 | | $0.85 | $0.5550 |
| $0.56 | $0.3575 | | $0.86 | $0.5650 |
| $0.57 | $0.3625 | | $0.87 | $0.5750 |
| $0.58 | $0.3675 | | $0.88 | $0.5850 |
| $0.59 | $0.3725 | | $0.89 | $0.5950 |
| $0.60 | $0.3775 | | $0.90 | $0.6050 |
| $0.61 | $0.3825 | | $0.91 | $0.6150 |
| $0.62 | $0.3875 | | $0.92 | $0.6250 |
| $0.63 | $0.3925 | | $0.93 | $0.6350 |
| $0.64 | $0.3975 | | $0.94 | $0.6450 |
| $0.65 | $0.4025 | | $0.95 | $0.6550 |
| $0.66 | $0.4100 | | $0.96 | $0.6650 |
| $0.67 | $0.4175 | | $0.97 | $0.6750 |
| $0.68 | $0.4250 | | $0.98 | $0.6850 |
| $0.69 | $0.4325 | | $0.99 | $0.6950 |
| | | | $1.00 | $0.7050 |

* Until new ICG equipment is installed, the whisker free market will be used and after new ICG equipment is installed, the whiskered market will be used.

# EXHIBIT 6

-----Original Message-----
**From:** Tom Sanecki
**Sent:** Thursday, May 02, 2002 1:47 PM
**To:** Kent Pummill (E-mail); Robert W Manly (E-mail)
**Cc:** Eric Svendsen
**Subject:** Clinton Contract Cancellation

Attached is our notice of cancellation of the Clinton contract.

<<Clinton contract renewal.doc>>

May 2, 2002

Robert W Manly
President and COO
Premium Standard Farms, Inc.
423 West 8th Street
Suite 200
Kansas City, MO 64105


Dear Robert W Manly,

As required by our contract for casings at your Clinton, NC plant, dated 08/01/1998, International Casings Group, Inc. is notifying you and Premium Standard Farms, Inc. that ICG is not renewing the contract. We sincerely hope that `our current negotiation results in our continued partnership at your Clinton Plant.


Sincerely,



Tom Sanecki
cc: Kent Pummill

# EXHIBIT 7

-----Original Message-----
From: Pummill, Kent [mailto:Kent.Pummill@psfarms.com]
Sent: Thursday, May 02, 2002 6:03 PM
To: 'Tom Sanecki'; Eric Svendsen
Cc: Manly, Bo; Schulte, Gerard
Subject: RE: Clinton Contract Cancellation


Right back at you.    This is our cancellation notice for Milan.  See
attached.  Looking forward to you possibly putting in new bids for the plants.

Thanks,

Kent

-----Original Message-----
From: Tom Sanecki [mailto:tsanecki@casings.com]
Sent: Thursday, May 02, 2002 1:47 PM
To: Kent Pummill (E-mail); Robert W Manly (E-mail)
Cc: Eric Svendsen
Subject: Clinton Contract Cancellation


Attached is our notice of cancellation of the Clinton contract.

  <<Clinton contract renewal.doc>>

1

May 2, 2002


Mr. Eric Svendsen
President
International Casings Group, Inc.
4420 South Wolcott Avenue
Chicago, IL 60609

Re:    Agreement Dated August 18, 1997 by and Between
       Premium Standard Farms (PSF) and International Casings Group

Dear Mr. Svendsen:

Pursuant to Section 6 of the above referenced Agreement, please consider this letter
PSF's 90-day notice to terminate.  PSF will terminate the Agreement as of August 18,
2002.

We are in receipt of your cancellation notice for the Lundy contract.  We have your
current proposal for new contracts for both Milan and Clinton and are in process of
evaluating them.

Please contact Kent Pummill at (816) 843-1425 if you have any questions.

Sincerely,



Robert W. Manly
President

RWM/ln

# EXHIBIT 8

Premium Standard Farms

ICG
Accounts Payable Distri
History File, After
Sessions 000000 to 01771
Vendor = PSF

| GL Account | Post Dte | Vendor | Invoice | Reference | in USD | | Currency | in orig. Curr. |
|---|---|---|---|---|---|---|---|---|
| 18602-00-000-000 -0 Harris | | Bank, US | D current account | | | | | |
| | 1/8/2002 | PSF00C | 366840 | 88644 | $ | (3,152.24) | USD | -3152.24 |
| | 1/8/2002 | PSF00C | 366996 | 88644 | $ | (10,041.95) | USD | -10042 |
| | 1/8/2002 | PSF00C | 367000 | 88644 | $ | (6,138.22) | USD | -6138.22 |
| | 1/15/2002 | PSF00C | 367192 | 88711 | $ | (4,094.52) | USD | -4094.52 |
| | 1/18/2002 | PSF00C | 367371 | 88775 | $ | (8,128.81) | USD | -8128.81 |
| | 1/25/2002 | PSF00C | 367604 | 88845 | $ | (4,707.99) | USD | -4707.99 |
| | 1/25/2002 | PSF00C | 367736 | 88845 | $ | (8,092.83) | USD | -8092.83 |
| | 1/31/2002 | PSF00C | 368015 | 88918 | $ | (4,110.79) | USD | -4110.79 |
| | 1/31/2002 | PSF00C | 368192 | 88918 | $ | (8,633.47) | USD | -8633.47 |
| | 2/8/2002 | PSF00C | 368249 | 88991 | $ | (4,644.87) | USD | -4644.87 |
| | 2/8/2002 | PSF00C | 368406 | 88991 | $ | (7,950.12) | USD | -7950.12 |
| | 2/19/2002 | PSF00C | 368666 | 89056 | $ | (7,536.23) | USD | -7536.23 |
| | 2/22/2002 | PSF00C | 368886 | 89107 | $ | (4,751.72) | USD | -4751.72 |
| | 2/22/2002 | PSF00C | 369138 | 89107 | $ | (4,690.50) | USD | -4690.5 |
| | 2/28/2002 | PSF00C | 368568 | 89165 | $ | (4,002.98) | USD | -4002.98 |
| | 2/28/2002 | PSF00C | 369137 | 89165 | $ | (7,536.13) | USD | -7536.13 |
| | 2/28/2002 | PSF00C | 369393 | 89165 | $ | (7,838.86) | USD | -7838.86 |
| | 2/28/2002 | PSF00C | 369487 | 89165 | $ | (4,095.91) | USD | -4095.91 |
| | 3/12/2002 | PSF00C | 369711 | 89248 | $ | (7,192.43) | USD | -7192.43 |
| | 3/13/2002 | PSF00C | 369826 | 89277 | $ | (4,118.29) | USD | -4118.29 |
| | 3/22/2002 | PSF00C | 369983 | 89346 | $ | (7,978.65) | USD | -7978.65 |
| | 3/22/2002 | PSF00C | 370096 | 89346 | $ | (4,203.92) | USD | -4203.92 |
| | 3/22/2002 | PSF00C | 370399 | 89346 | $ | (8,814.19) | USD | -8814.19 |
| | 3/28/2002 | PSF00C | 370512 | 89435 | $ | (3,391.16) | USD | -3391.16 |
| | 3/28/2002 | PSF00C | 370731 | 89435 | $ | (9,658.14) | USD | -9658.14 |
| | 4/4/2002 | PSF00C | 370829 | 89500 | $ | (3,418.97) | USD | -3418.97 |
| | 4/11/2002 | PSF00C | 371100 | 89571 | $ | (8,740.96) | USD | -8740.96 |
| | 4/11/2002 | PSF00C | 371227 | 89571 | $ | (4,482.37) | USD | -4482.37 |
| | 4/11/2002 | PSF00C | 371367 | 89571 | $ | (7,411.15) | USD | -7411.15 |
| | 4/19/2002 | PSF00C | 371620 | 89648 | $ | (4,332.79) | USD | -4332.79 |
| | 4/25/2002 | PSF00C | 371862 | 89703 | $ | (3,617.12) | USD | -3617.12 |
| | 5/3/2002 | PSF00C | 10000056 | 89780 | $ | (3,566.43) | USD | -3566.43 |
| | 5/3/2002 | PSF00C | 10000456 | 89780 | $ | (4,269.13) | USD | -4269.13 |
| | 5/10/2002 | PSF00C | 10000056* | 89857 | $ | (3,566.43) | USD | -3566.43 |
| | 5/10/2002 | PSF00C | 371715 | 89857 | $ | (10,851.59) | USD | -10851.6 |
| | 5/10/2002 | PSF00C | 371998 | 89857 | $ | (8,707.58) | USD | -8707.58 |
| | 5/17/2002 | PSF00C | 10000255 | 89937 | $ | (7,783.13) | USD | -7783.13 |
| | 5/17/2002 | PSF00C | 10000808 | 89937 | $ | (9,748.41) | USD | -9748.41 |
| | 5/17/2002 | PSF00C | 10000967 | 89925 | $ | (4,460.76) | USD | -4460.76 |
| | 5/17/2002 | PSF00C | 10001130 | 89937 | $ | (7,629.00) | USD | -7629 |
| | 5/17/2002 | PSF00C | 10001381 | 89925 | $ | (4,489.67) | USD | -4489.67 |
| | 5/24/2002 | PSF00C | 10000199 | 89998 | $ | (1,710.33) | USD | -1710.33 |
| | 5/24/2002 | PSF00C | 10001539 | 89998 | $ | (7,830.87) | USD | -7830.87 |
| | 5/31/2002 | PSF00C | 10001684 | 90055 | $ | (4,509.93) | USD | -4509.93 |
| | 5/31/2002 | PSF00C | 10002245 | 90055 | $ | (4,723.38) | USD | -4723.38 |
| | 6/13/2002 | PSF00C | 10002009 | 90169 | $ | (10,991.50) | USD | -10991.5 |
| | 6/13/2002 | PSF00C | 10002443 | 90169 | $ | (7,255.94) | USD | -7255.94 |
| | 6/13/2002 | PSF00C | 10002737 | 90169 | $ | (7,267.18) | USD | -7267.18 |

Premium Standard Farms

ICG
Accounts Payable Distri
History File, After
Sessions 000000 to 01771
Vendor = PSF

| GL Account | Post Dte | Vendor | Invoice | Reference | in USD | Currency | in orig. Curr. |
|---|---|---|---|---|---|---|---|
| | 6/18/2002 | PSF00C | 10002557 | 90180 | $ (5,108.36) | USD | -5108.36 |
| | 6/21/2002 | PSF00C | 10003063 | 90232 | $ (5,114.11) | USD | -5114.11 |
| | 6/21/2002 | PSF00C | 10003499 | 90232 | $ (5,142.33) | USD | -5142.33 |
| | 7/3/2002 | PSF00C | 10003231 | 90319 | $ (7,778.51) | USD | -7778.51 |
| | 7/3/2002 | PSF00C | 10004106 | 90319 | $ (7,974.92) | USD | -7974.92 |
| | 7/11/2002 | PSF00C | 10004100 | 90398 | $ (5,328.58) | USD | -5328.58 |
| | 7/11/2002 | PSF00C | 10004453 | 90398 | $ (5,252.54) | USD | -5252.54 |
| | 7/22/2002 | PSF00C | 10004934 | 90464 | $ (5,569.31) | USD | -5569.31 |
| | 7/26/2002 | PSF00C | 10005361 | 90511 | $ (5,547.97) | USD | -5547.97 |
| | 8/2/2002 | PSF00C | 10003718 | 90588 | $ (10,889.77) | USD | -10889.8 |
| | 8/2/2002 | PSF00C | 10004711 | 90588 | $ (7,560.44) | USD | -7560.44 |
| | 8/2/2002 | PSF00C | 10005133 | 90588 | $ (7,017.30) | USD | -7017.3 |
| | 8/2/2002 | PSF00C | 10005457 | 90588 | $ (9,367.56) | USD | -9367.56 |
| | 8/2/2002 | PSF00C | 10005779 | 90569 | $ (6,472.64) | USD | -6472.64 |
| | 8/2/2002 | PSF00C | 10006157 | 90569 | $ (6,396.25) | USD | -6396.25 |
| | 8/2/2002 | PSF00C | 89857 | 90588 | $ 3,566.43 | USD | 3566.43 |
| | 8/16/2002 | PSF00C | 10006560 | 90706 | $ (6,486.55) | USD | -6486.55 |
| | 8/22/2002 | PSF00C | 10007114 | 90761 | $ (6,366.71) | USD | -6366.71 |
| | 8/22/2002 | PSF00C | 10007505 | 90761 | $ (6,400.06) | USD | -6400.06 |
| | 8/28/2002 | PSF00C | 10005996 | 90785 | $ (7,849.11) | USD | -7849.11 |
| | 8/28/2002 | PSF00C | 10006001 | 90785 | $ (2,129.45) | USD | -2129.45 |
| | 8/28/2002 | PSF00C | 10006419 | 90785 | $ (8,286.87) | USD | -8286.87 |
| | 8/28/2002 | PSF00C | 10007742 | 90785 | $ (10,142.71) | USD | -10142.7 |
| | 9/4/2002 | PSF00C | 10006833 | 90838 | $ (7,077.62) | USD | -7077.62 |
| | 9/6/2002 | PSF00C | 10008093 | 90899 | $ (5,712.15) | USD | -5712.15 |
| | 9/6/2002 | PSF00C | 10008474 | 90899 | $ (5,628.61) | USD | -5628.61 |
| | 9/13/2002 | PSF00C | 10008883 | 90945 | $ (4,944.94) | USD | -4944.94 |
| | 9/17/2002 | PSF00C | 10007300 | 90980 | $ (6,730.31) | USD | -6730.31 |
| | 9/17/2002 | PSF00C | 10008227 | 90980 | $ (7,583.50) | USD | -7583.5 |
| | 9/17/2002 | PSF00C | 10008601 | 90980 | $ (7,597.54) | USD | -7597.54 |
| | 9/17/2002 | PSF00C | 10009062 | 90980 | $ (6,862.34) | USD | -6862.34 |
| | 9/30/2002 | PSF00C | 10008767 | 91101 | $ (931.51) | USD | -931.51 |
| | 9/30/2002 | PSF00C | 10009520 | 91101 | $ (10,687.12) | USD | -10687.1 |
| | 10/3/2002 | PSF00C | 10010137 | 91173 | $ (5,607.25) | USD | -5607.25 |
| | 10/3/2002 | PSF00C | 10010505 | 91173 | $ (6,543.06) | USD | -6543.06 |
| | 10/10/2002 | PSF00C | 10010249 | 91244 | $ (7,520.46) | USD | -7520.46 |
| | 10/10/2002 | PSF00C | 10010631 | 91244 | $ (7,688.05) | USD | -7688.05 |
| | 10/16/2002 | PSF00C | 10011049 | 91264 | $ (7,326.69) | USD | -7326.69 |
| | 10/17/2002 | PSF00C | 10010881 | 91309 | $ (5,652.99) | USD | -5652.99 |
| | 10/17/2002 | PSF00C | 10011326 | 91309 | $ (5,773.19) | USD | -5773.19 |
| | 10/22/2002 | PSF00C | 10009511 | 91344 | $ (6,688.14) | USD | -6688.14 |
| | 10/22/2002 | PSF00C | 10011626 | 91357 | $ (10,571.27) | USD | -10571.3 |
| | 10/25/2002 | PSF00C | 10011624 | 91384 | $ (1,580.67) | USD | -1580.67 |
| | 10/30/2002 | PSF00C | 10011801 | 91434 | $ (5,807.40) | USD | -5807.4 |
| | 11/5/2002 | PSF00C | 10012031 | 91463 | $ (8,187.98) | USD | -8187.98 |
| | 11/5/2002 | PSF00C | 10012565 | 91463 | $ (8,319.15) | USD | -8319.15 |
| | 11/7/2002 | PSF00C | 10012333 | 91517 | $ (4,784.22) | USD | -4784.22 |
| | 11/7/2002 | PSF00C | 10012760 | 91517 | $ (5,964.01) | USD | -5964.01 |
| | 11/12/2002 | PSF00C | 10012916 | 91540 | $ (9,904.70) | USD | -9904.7 |

Premium Standard Farms

ICG
Accounts Payable Distri
History File, After
Sessions 000000 to 01771
Vendor = PSF

| GL Account | Post Dte | Vendor | Invoice | Reference | in USD | Currency | in orig. Curr. |
|---|---|---|---|---|---|---|---|
| | 11/14/2002 | PSF00C | 10013236 | 91572 | $ (6,124.10) | USD | -6124.1 |
| | 11/19/2002 | PSF00C | 10013462 | 91628 | $ (10,475.97) | USD | -10476 |
| | 11/22/2002 | PSF00C | 10013837 | 91657 | $ (4,262.83) | USD | -4262.83 |
| | 11/26/2002 | PSF00C | 10014036 | 91692 | $ (10,154.16) | USD | -10154.2 |
| | 12/4/2002 | PSF00C | 10014346 | 91738 | $ (5,048.64) | USD | -5048.64 |
| | 12/6/2002 | PSF00C | 10014752 | 91776 | $ (8,938.88) | USD | -8938.88 |
| | 12/12/2002 | PSF00C | 10014990 | 91846 | $ (4,208.21) | USD | -4208.21 |
| | 12/18/2002 | PSF00C | 10015097 | 91890 | $ (8,135.21) | USD | -8135.21 |
| | 12/19/2002 | PSF00C | 10015462 | 91906 | $ (5,080.61) | USD | -5080.61 |
| | 12/19/2002 | PSF00C | 10015741 | 91908 | $ (9,559.97) | USD | -9559.97 |
| | 12/19/2002 | PSF00C | 10016486 | 91908 | $ (11,266.85) | USD | -11266.9 |
| | 12/23/2002 | PSF00C | 10015971 | 91953 | $ (4,202.50) | USD | -4202.5 |
| | 12/30/2002 | PSF00C | 10017041 | 92004 | $ (9,926.38) | USD | -9926.38 |
| | 12/31/2002 | PSF00C | 10016976 | 92020 | $ (4,947.70) | USD | -4947.7 |
| | 1/8/2003 | PSF00C | 10017251 | 92091 | $ (5,142.05) | USD | -5142.05 |
| | 1/8/2003 | PSF00C | 10017367 | 92091 | $ (6,509.93) | USD | -6509.93 |
| | 1/15/2003 | PSF00C | 10017675 | 92146 | $ (5,156.66) | USD | -5156.66 |
| | 1/21/2003 | PSF00C | 10018076 | 92201 | $ (7,389.61) | USD | -7389.61 |
| | 1/21/2003 | PSF00C | 10018638 | 92202 | $ (9,723.98) | USD | -9723.98 |
| | 1/24/2003 | PSF00C | 10018287 | 92250 | $ (5,134.57) | USD | -5134.57 |
| | 1/24/2003 | PSF00C | 10018947 | 92250 | $ (6,108.79) | USD | -6108.79 |
| | 1/30/2003 | PSF00C | 10018751 | 92308 | $ (968.96) | USD | -968.96 |
| | 1/30/2003 | PSF00C | 10019474 | 92308 | $ (6,146.06) | USD | -6146.06 |
| | 2/6/2003 | PSF00C | 10019216 | 92359 | $ (11,609.92) | USD | -11609.9 |
| | 2/6/2003 | PSF00C | 10019216* | 92359 | $ 1,314.65 | USD | 1314.65 |
| | 2/12/2003 | PSF00C | 10019823 | 92428 | $ (6,646.59) | USD | -6646.59 |
| | 2/14/2003 | PSF00C | 10019673 | 92453 | $ (7,683.35) | USD | -7683.35 |
| | 2/14/2003 | PSF00C | 10020270 | 92453 | $ (7,836.91) | USD | -7836.91 |
| | 2/14/2003 | PSF00C | 10020390 | 92453 | $ (5,957.96) | USD | -5957.96 |
| | 2/14/2003 | PSF00C | 10020654 | 92453 | $ (8,562.74) | USD | -8562.74 |
| | 2/24/2003 | PSF00C | 10021141 | 92541 | $ (10,087.34) | USD | -10087.3 |
| | 2/26/2003 | PSF00C | 10020940 | 92572 | $ (6,061.84) | USD | -6061.84 |
| | 3/4/2003 | PSF00C | 10021831 | 92619 | $ (8,050.76) | USD | -8050.76 |
| | 3/7/2003 | PSF00C | 10021481 | 92675 | $ (8,802.00) | USD | -8802 |
| | 3/7/2003 | PSF00C | 10022031 | 92675 | $ (8,654.40) | USD | -8654.4 |
| | 3/13/2003 | PSF00C | 10022258 | 92720 | $ (8,422.04) | USD | -8422.04 |
| | 3/13/2003 | PSF00C | 10022677 | 92720 | $ (9,060.48) | USD | -9060.48 |
| | 3/18/2003 | PSF00C | 10023021 | 92773 | $ (8,183.98) | USD | -8183.98 |
| | 3/20/2003 | PSF00C | 10023176 | 92815 | $ (9,269.76) | USD | -9269.76 |
| | 4/2/2003 | PSF00C | 10023429 | 92922 | $ (9,188.31) | USD | -9188.31 |
| | 4/2/2003 | PSF00C | 10023712 | 92922 | $ (9,043.52) | USD | -9043.52 |
| | 4/2/2003 | PSF00C | 10024141 | 92922 | $ (7,735.03) | USD | -7735.03 |
| | 4/4/2003 | PSF00C | 10024497 | 92960 | $ (9,671.97) | USD | -9671.97 |
| | 4/15/2003 | PSF00C | 10024642 | 93044 | $ (8,155.11) | USD | -8155.11 |
| | 4/15/2003 | PSF00C | 10025035 | 93044 | $ (11,352.99) | USD | -11353 |
| | 4/15/2003 | PSF00C | 10025312 | 93044 | $ (9,942.16) | USD | -9942.16 |
| | 4/23/2003 | PSF00C | 10025658 | 93105 | $ (10,467.27) | USD | -10467.3 |
| | 4/29/2003 | PSF00C | 10026068 | 93158 | $ (8,575.98) | USD | -8575.98 |
| | 4/29/2003 | PSF00C | 10026139 | 93158 | $ (72.33) | USD | -72.33 |

Premium Standard Farms

ICG
Accounts Payable Distri
History File, After
Sessions 000000 to 01771
Vendor = PSF

| GL Account | Post Dte | Vendor | Invoice | Reference | in USD | Currency | in orig. Curr. |
|---|---|---|---|---|---|---|---|
| | 4/29/2003 | PSF00C | 2041 | 93158 | $ (2,992.44) | USD | -2992.44 |
| | 4/30/2003 | PSF00C | 10026352 | 93213 | $ (9,079.68) | USD | -9079.68 |
| | 4/30/2003 | PSF00C | 10026674 | 93213 | $ (13,069.76) | USD | -13069.8 |
| | 4/30/2003 | PSF00C | 10026865 | 93213 | $ (9,831.36) | USD | -9831.36 |
| | 5/8/2003 | PSF00C | 10027228* | 93259 | $ (7,142.76) | USD | -7142.76 |
| | 5/14/2003 | PSF00C | 10027548 | 93316 | $ (9,199.68) | USD | -9199.68 |
| | 5/14/2003 | PSF00C | 10027767 | 93316 | $ (7,015.94) | USD | -7015.94 |
| | 5/19/2003 | PSF00C | 10028345 | 93359 | $ (11,140.78) | USD | -11140.8 |
| | 5/19/2003 | PSF00C | 10028519 | 93359 | $ (9,083.62) | USD | -9083.62 |
| | 5/30/2003 | PSF00C | 10028798 | 93455 | $ (10,486.99) | USD | -10487 |
| | 5/30/2003 | PSF00C | 10029098 | 93455 | $ (9,012.22) | USD | -9012.22 |
| | 5/30/2003 | PSF00C | 10029458 | 93455 | $ (8,934.82) | USD | -8934.82 |
| | 6/4/2003 | PSF00C | 10029709 | 93515 | $ (7,949.51) | USD | -7949.51 |
| | 6/10/2003 | PSF00C | 10030038 | 93554 | $ (7,293.68) | USD | -7293.68 |
| | 6/10/2003 | PSF00C | 20020065 | 93554 | $ (48.29) | USD | -48.29 |
| | 6/18/2003 | PSF00C | 10030480 | 93619 | $ (5,891.92) | USD | -5891.92 |
| | 6/18/2003 | PSF00C | 10030792 | 93619 | $ (9,577.92) | USD | -9577.92 |
| | 6/25/2003 | PSF00C | 10031359 | 93682 | $ (9,502.08) | USD | -9502.08 |
| | 7/3/2003 | PSF00C | 10031114 | 93743 | $ (7,461.19) | USD | -7461.19 |
| | 7/3/2003 | PSF00C | 10031472 | 93743 | $ (9,452.91) | USD | -9452.91 |
| | 7/3/2003 | PSF00C | 10032265 | 93743 | $ (9,315.52) | USD | -9315.52 |
| | 7/14/2003 | PSF00C | 10032455 | 93807 | $ (10,370.29) | USD | -10370.3 |
| | 7/14/2003 | PSF00C | 10032762 | 93807 | $ (11,130.24) | USD | -11130.2 |
| | 7/14/2003 | PSF00C | 10032906 | 93807 | $ (10,542.58) | USD | -10542.6 |
| | 7/14/2003 | PSF00C | 10033256 | 93807 | $ (7,271.68) | USD | -7271.68 |
| | 7/14/2003 | PSF00C | 10033595 | 93807 | $ (6,075.41) | USD | -6075.41 |
| | 7/24/2003 | PSF00C | 10033969 | 93917 | $ (8,539.20) | USD | -8539.2 |
| | 7/24/2003 | PSF00C | 10034102 | 93917 | $ (8,886.86) | USD | -8886.86 |
| | 7/31/2003 | PSF00C | 10034473 | 93967 | $ (8,565.60) | USD | -8565.6 |
| | 7/31/2003 | PSF00C | 10034596 | 93967 | $ (7,866.51) | USD | -7866.51 |
| | 7/31/2003 | PSF00C | 10035022 | 93967 | $ (8,329.50) | USD | -8329.5 |
| | 8/6/2003 | PSF00C | 10035021 | 94040 | $ (1,962.80) | USD | -1962.8 |
| | 8/6/2003 | PSF00C | 10035340 | 94040 | $ (8,152.61) | USD | -8152.61 |
| | 8/14/2003 | PSF00C | 10035634 | 94084 | $ (8,510.10) | USD | -8510.1 |
| | 8/14/2003 | PSF00C | 10035799 | 94084 | $ (7,167.99) | USD | -7167.99 |
| | 8/27/2003 | PSF00C | 10036224 | 94183 | $ (8,376.94) | USD | -8376.94 |
| | 8/27/2003 | PSF00C | 10036685 | 94183 | $ (8,621.70) | USD | -8621.7 |
| | 8/27/2003 | PSF00C | 10036768 | 94183 | $ (8,768.87) | USD | -8768.87 |
| | 8/27/2003 | PSF00C | 10036886 | 94183 | $ (8,235.79) | USD | -8235.79 |
| | 9/5/2003 | PSF00C | 10037424 | 94258 | $ (7,929.60) | USD | -7929.6 |
| | 9/11/2003 | PSF00C | 10037718 | 94309 | $ (7,339.30) | USD | -7339.3 |
| | 9/11/2003 | PSF00C | 10038267 | 94309 | $ (7,668.54) | USD | -7668.54 |
| | 9/11/2003 | PSF00C | 10038303 | 94309 | $ (8,652.45) | USD | -8652.45 |
| | 9/18/2003 | PSF00C | 10038784 | 94385 | $ (8,025.48) | USD | -8025.48 |
| | 9/18/2003 | PSF00C | 10038918 | 94385 | $ (7,931.08) | USD | -7931.08 |
| | 9/24/2003 | PSF00C | 10039711 | 94445 | $ (10,140.12) | USD | -10140.1 |
| | 9/30/2003 | PSF00C | 10039422 | 94485 | $ (7,999.83) | USD | -7999.83 |
| | 9/30/2003 | PSF00C | 10040135 | 94485 | $ (9,796.68) | USD | -9796.68 |
| | 9/30/2003 | PSF00C | 10040447 | 94485 | $ (9,786.87) | USD | -9786.87 |

Premium Standard Farms

ICG
Accounts Payable Distri
History File, After
Sessions 000000 to 01771
Vendor = PSF

| GL Account | Post Dte | Vendor | Invoice | Reference | in USD | | Currency | in orig. Curr. |
|---|---|---|---|---|---|---|---|---|
| | 10/9/2003 | PSF00C | 10040725 | 94568 | $ | (8,120.25) | USD | -8120.25 |
| | 10/9/2003 | PSF00C | 10040866 | 94568 | $ | (7,697.75) | USD | -7697.75 |
| | 10/16/2003 | PSF00C | 10041398 | 94632 | $ | (9,715.95) | USD | -9715.95 |
| | 10/16/2003 | PSF00C | 10041744 | 94632 | $ | (9,311.68) | USD | -9311.68 |
| | 10/16/2003 | PSF00C | 10042111 | 94632 | $ | (8,113.50) | USD | -8113.5 |
| | 10/30/2003 | PSF00C | 10042474 | 94731 | $ | (9,653.25) | USD | -9653.25 |
| | 10/30/2003 | PSF00C | 10042776 | 94731 | $ | (9,978.64) | USD | -9978.64 |
| | 10/30/2003 | PSF00C | 10043053 | 94731 | $ | (9,703.18) | USD | -9703.18 |
| | 10/30/2003 | PSF00C | 10043513 | 94731 | $ | (8,519.00) | USD | -8519 |
| | 11/13/2003 | PSF00C | 10043819 | 94854 | $ | (7,780.04) | USD | -7780.04 |
| | 11/13/2003 | PSF00C | 10044232 | 94854 | $ | (10,755.23) | USD | -10755.2 |
| | 11/26/2003 | PSF00C | 10044515 | 94994 | $ | (9,115.90) | USD | -9115.9 |
| | 11/26/2003 | PSF00C | 10045266 | 94994 | $ | (9,969.38) | USD | -9969.38 |
| | 11/26/2003 | PSF00C | 10045910 | 94994 | $ | (11,238.20) | USD | -11238.2 |
| | 12/4/2003 | PSF00C | 10044927 | 95063 | $ | (11,094.60) | USD | -11094.6 |
| | 12/4/2003 | PSF00C | 10045125 | 95063 | $ | (1,332.54) | USD | -1332.54 |
| | 12/4/2003 | PSF00C | 10045582 | 95063 | $ | (9,297.00) | USD | -9297 |
| | 12/4/2003 | PSF00C | 10046389 | 95063 | $ | (11,296.71) | USD | -11296.7 |
| | 12/4/2003 | PSF00C | 10047146 | 95063 | $ | (9,591.71) | USD | -9591.71 |
| | 12/12/2003 | PSF00C | 10046734 | 95141 | $ | (10,347.91) | USD | -10347.9 |
| | 12/12/2003 | PSF00C | 10047405 | 95141 | $ | (8,575.36) | USD | -8575.36 |
| | 12/12/2003 | PSF00C | 10047862 | 95141 | $ | (9,344.00) | USD | -9344 |
| | 12/12/2003 | PSF00C | 20027522 | 95141 | $ | (1,260.61) | USD | -1260.61 |
| | 12/23/2003 | PSF00C | 10048249 | 95212 | $ | (8,415.30) | USD | -8415.3 |
| | 12/23/2003 | PSF00C | 10048658 | 95212 | $ | (11,447.36) | USD | -11447.4 |
| | 12/23/2003 | PSF00C | 10048782 | 95212 | $ | (12,710.04) | USD | -12710 |
| | 12/30/2003 | PSF00C | 10049275 | 95290 | $ | (12,209.34) | USD | -12209.3 |
| | 12/30/2003 | PSF00C | 10049498 | 95290 | $ | (10,264.22) | USD | -10264.2 |
| | | | Total | | $ | (1,638,539.08) | | |

# International Casings Group
## Vendor

## Premium Standard Farm    Milan

### Labor                    2004

| Supplier Number | Document Number | Purchase Order | Invoice Number | Invoice Date | G/L Date | Gross Amount |
|---|---|---|---|---|---|---|
| 501510 | 4006443 | | 10061648 | 5/4/2003 | 5/18/2004 | 7,215.55 |
| 501510 | 4004053 | | 10050667 | 1/7/2004 | 1/22/2004 | |
| 501510 | 4004053 | | 10050667 | 1/7/2004 | 2/5/2004 | -7,569.87 |
| 501510 | 4004063 | | 10051297 | 1/14/2004 | 1/22/2004 | 10,442.30 |
| 501510 | 4004321 | | 10052041 | 1/21/2004 | 1/30/2004 | 7,200.44 |
| 501510 | 4004361 | | 10052623 | 1/28/2004 | 1/30/2004 | 8,162.91 |
| 501510 | 4005169 | | 20029689 | 1/30/2004 | 3/12/2004 | 48.29 |
| 501510 | 4005025 | | 10053246 | 2/3/2004 | 3/5/2004 | 8,138.60 |
| 501510 | 4005024 | | 10053849 | 2/11/2004 | 3/5/2004 | 8,203.99 |
| 501510 | 4004534 | | 10054581 | 2/19/2004 | 2/27/2004 | 8,946.81 |
| 501510 | 4005999 | | 10054683 | 2/20/2004 | 4/22/2004 | 271.12 |
| 501510 | 4004533 | | 10055352 | 2/26/2004 | 2/27/2004 | 7,144.66 |
| 501510 | 4005170 | | 10055721 | 3/2/2004 | 3/12/2004 | 7,364.87 |
| 501510 | 4005341 | | 10056694 | 3/10/2004 | 3/23/2004 | 8,081.47 |
| 501510 | 4005340 | | 10057099 | 3/16/2004 | 3/23/2004 | 10,462.35 |
| 501510 | 4005810 | | 2256 | 3/17/2004 | 4/13/2004 | 39.94 |
| 501510 | 4005558 | | 10057996 | 3/25/2004 | 3/31/2004 | 7,176.27 |
| 501510 | 4005559 | | 10058577 | 3/30/2004 | 3/31/2004 | 7,861.08 |
| 501510 | 4005808 | | 10059325 | 4/7/2004 | 4/13/2004 | 10,033.79 |
| 501510 | 4005998 | | 10059746 | 4/13/2004 | 4/22/2004 | 9,199.62 |
| 501510 | 4006077 | | 10060281 | 4/20/2004 | 4/30/2004 | 12,940.08 |
| 501510 | 4006442 | | 10061109 | 4/28/2004 | 5/18/2004 | 6,971.94 |
| 501510 | 4006444 | | 10062288 | 5/12/2004 | 5/18/2004 | 6,968.05 |
| 501510 | 4006762 | | 452099100 | 5/14/2004 | 5/28/2004 | |
| 501510 | 4006762 | | 452099100 | 5/14/2004 | 6/4/2004 | -496.42 |
| 501510 | 4006640 | | 10062801 | 5/18/2004 | 5/25/2004 | 9,993.78 |
| 501510 | 4006789 | | 10063353 | 5/24/2004 | 5/28/2004 | 654.32 |
| 501510 | 4007035 | | 10063921 | 5/28/2004 | 6/15/2004 | 8,280.64 |
| 501510 | 4007036 | | 10064317 | 6/2/2004 | 6/15/2004 | 7,142.76 |
| 501510 | 4007159 | | 10065024 | 6/9/2004 | 6/22/2004 | 5,887.34 |
| 501510 | 4007160 | | 10065437 | 6/16/2004 | 6/22/2004 | 8,320.05 |
| 501510 | 4007724 | | 20034803 | 6/21/2004 | 7/16/2004 | 48.29 |
| 501510 | 4007420 | | 10066015 | 6/23/2004 | 6/30/2004 | 6,986.44 |
| 501510 | 4007419 | | 10066565 | 6/29/2004 | 6/30/2004 | 9,295.58 |
| 501510 | 4007683 | | 10067188 | 7/7/2004 | 7/16/2004 | 6,515.50 |
| 501510 | 4007702 | | 10067966 | 7/14/2004 | 7/16/2004 | 11,016.00 |
| 501510 | 4007906 | | 10068664 | 7/21/2004 | 7/26/2004 | 7,873.86 |
| 501510 | 4008417 | | 10069220 | 7/29/2004 | 8/12/2004 | 9,700.00 |
| 501510 | 4008331 | | 10069512 | 8/3/2004 | 8/6/2004 | 10,120.83 |
| 501510 | 4008416 | | 10070125 | 8/10/2004 | 8/12/2004 | 9,563.33 |
| 501510 | 4008727 | | 10071237 | 8/19/2004 | 8/26/2004 | 7,712.94 |
| 501510 | 4008798 | | 10071874 | 8/26/2004 | 8/31/2004 | 7,655.07 |
| 501510 | 4008845 | | 10072267 | 8/31/2004 | 9/2/2004 | 7,266.74 |
| 501510 | 4009022 | | 10072901 | 9/8/2004 | 9/14/2004 | 6,904.05 |
| 501510 | 4009128 | | 10073712 | 9/15/2004 | 9/22/2004 | 7,162.19 |
| 501510 | 4009129 | | 10073711 | 9/15/2004 | 9/22/2004 | 41.3 |
| 501510 | 4009215 | | 10074433 | 9/22/2004 | 9/23/2004 | 10,526.53 |

# International Casings Group
# Vendor

## Premium Standard Farm     Milan

**Labor**                    2004

| Supplier Number | Document Number | Purchase Order | Invoice Number | Invoice Date | G/L Date | Gross Amount |
|---|---|---|---|---|---|---|
| 501510 | 4009258 | | 20037965 | 9/22/2004 | 9/28/2004 | 255.2 |
| 501510 | 4009334 | | 10074868 | 9/28/2004 | 9/30/2004 | 7,679.22 |
| 501510 | 4009506 | | 10075937 | 10/7/2004 | 10/12/2004 | 10,288.86 |
| 501510 | 4009608 | | 10076825 | 10/14/2004 | 10/19/2004 | 11,686.20 |
| 501510 | 4009860 | | 10077227 | 10/19/2004 | 10/29/2004 | 3,813.97 |
| 501510 | 4009731 | | 10077397 | 10/20/2004 | 10/26/2004 | 11,112.10 |
| 501510 | 4009967 | | 10077967 | 10/26/2004 | 11/1/2004 | 9,927.29 |
| 501510 | 4009999 | | 10078692 | 11/2/2004 | 11/3/2004 | 10,974.51 |
| 501510 | 4010197 | | 10079407 | 11/10/2004 | 11/11/2004 | 10,960.15 |
| **Total** | | | | | | **380,172.88** |
| **Runners** | 2004 | | | | | |
| 501510 | 4004344 | 04052024 | 10051017 | 1/21/2004 | 1/30/2004 | 9,841.98 |
| 501510 | 4004343 | 04052025 | 10052034 | 1/21/2004 | 1/30/2004 | 10,333.61 |
| 501510 | 4004364 | 04052029 | 10052415 | 1/26/2004 | 1/30/2004 | 10,211.64 |
| 501510 | 4004400 | 04052031 | 10053033 | 2/2/2004 | 2/13/2004 | 10,832.59 |
| 501510 | 4004401 | 04052035 | 10053597 | 2/9/2004 | 2/13/2004 | 10,771.33 |
| 501510 | 4004539 | 04052049 | 20030514 | 2/20/2004 | 2/27/2004 | 12,422.75 |
| 501510 | 4004541 | 04052051 | 10054313 | 2/17/2004 | 2/27/2004 | 10,687.95 |
| 501510 | 4004542 | 04052052 | 10054017 | 2/24/2004 | 2/27/2004 | 10,687.95 |
| 501510 | 4005299 | 04052054 | 10055712 | 3/2/2004 | 3/16/2004 | 10,657.50 |
| 501510 | 4005300 | 04052061 | 10056443 | 3/8/2004 | 3/16/2004 | 10,828.60 |
| 501510 | 4005333 | 04052075 | 10057078 | 3/16/2004 | 3/23/2004 | 11,239.69 |
| 501510 | 4005437 | 04052078 | 10057557 | 3/22/2004 | 3/24/2004 | 11,488.08 |
| 501510 | 4005564 | 04052082 | 10058298 | 3/29/2004 | 3/31/2004 | 11,456.75 |
| 501510 | 4006028 | 04052089 | 10059016 | 4/5/2004 | 4/22/2004 | 13,369.16 |
| 501510 | 4006029 | 04052095 | 10059619 | 4/12/2004 | 4/22/2004 | 11,850.30 |
| 501510 | 4006523 | 04052105 | 10060427 | 4/21/2004 | 5/21/2004 | 13,890.03 |
| 501510 | 4006092 | 04052106 | 10060817 | 4/26/2004 | 5/4/2004 | 11,807.58 |
| 501510 | 4006681 | 04052111 | 10061485 | 5/3/2004 | 5/25/2004 | 12,163.58 |
| 501510 | 4006680 | 04052113 | 10062099 | 5/10/2004 | 5/25/2004 | 11,756.95 |
| 501510 | 4006690 | 04052119 | 10062599 | 5/17/2004 | 5/25/2004 | 11,678.45 |
| 501510 | 4006793 | 04052122 | 10063344 | 5/24/2004 | 6/3/2004 | 13,887.83 |
| 501510 | 4006973 | 04052127 | 10064127 | 6/1/2004 | 6/9/2004 | 12,151.20 |
| 501510 | 4007134 | 04052133 | 10064879 | 6/8/2004 | 6/17/2004 | 9,608.80 |
| 501510 | 4007294 | 04052137 | 10065349 | 6/15/2004 | 6/24/2004 | 12,232.34 |
| 501510 | 4007463 | 04052148 | 10065826 | 6/21/2004 | 7/8/2004 | 11,708.70 |
| 501510 | 4007466 | 04052149 | 10066365 | 6/28/2004 | 7/8/2004 | 14,817.52 |
| 501510 | 4007823 | 04052154 | 10066952 | 7/5/2004 | 7/19/2004 | 9,974.38 |
| 501510 | 4007822 | 04052161 | 10067625 | 7/12/2004 | 7/19/2004 | 14,229.49 |
| 501510 | 4007990 | 04052166 | 10068312 | 7/19/2004 | 7/28/2004 | 12,138.61 |
| 501510 | 4007991 | 04052167 | 10068868 | 7/26/2004 | 7/28/2004 | 14,055.49 |
| 501510 | 4008347 | 04052173 | 10069306 | 8/4/2004 | 8/6/2004 | 13,056.94 |
| 501510 | 4008813 | 04052177 | 10069999 | 8/9/2004 | 8/31/2004 | 15,788.94 |
| 501510 | 4008531 | 04052183 | 10070636 | 8/16/2004 | 8/24/2004 | 12,406.19 |
| 501510 | 4008812 | 04052186 | 10071467 | 8/23/2004 | 8/31/2004 | 16,079.00 |
| 501510 | 4008846 | 04052190 | 10072124 | 8/30/2004 | 9/2/2004 | 13,603.06 |

**International Casings Group**
**Vendor**

**Premium Standard Farm     Milan**

**Labor**                   **2004**

| Supplier Number | Document Number | Purchase Order | Invoice Number | Invoice Date | G/L Date | Gross Amount |
|---|---|---|---|---|---|---|
| 501510 | 4009039 | 04052194 | 10072726 | 9/7/2004 | 9/15/2004 | 14,227.05 |
| 501510 | 4009040 | 04052197 | 10073318 | 9/13/2004 | 9/15/2004 | 13,711.20 |
| 501510 | 4009216 | 04052203 | 10074159 | 9/20/2004 | 9/28/2004 | 17,225.32 |
| 501510 | 4009273 | 04052207 | 10074759 | 9/27/2004 | 9/29/2004 | 14,271.85 |
| 501510 | 4009427 | 04052213 | 10075547 | 10/5/2004 | 10/8/2004 | 17,073.73 |
| 501510 | 4009580 | 04052217 | 10076224 | 10/11/2004 | 10/19/2004 | 17,200.43 |
| 501510 | 4009735 | 04052221 | 10077130 | 10/18/2004 | 10/26/2004 | 17,426.68 |
| 501510 | 4009925 | 04052226 | 10077918 | 10/26/2004 | 10/29/2004 | 17,407.22 |
| 501510 | 4010003 | 04052227 | 10078541 | 11/1/2004 | 11/5/2004 | 17,974.44 |
| 501510 | 4010206 | 04052236 | 10079127 | 11/8/2004 | 11/12/2004 | 17,760.79 |

**Total**

587,993.67

# EXHIBIT 9

Lundy

ICG
Accounts Payable Distribution Jou
Current and History Files, After 01
Sessions 000000 to 017715, All Acc
Vendor = LUN00C

| GL Ac | count | Post Dte | Vendor | Invoice | Amount in USD | Currency | Amount in orig. Curr. |
|-------|-------|----------|--------|---------|---------------|----------|------------------------|
| 18602 -00-000-000-00 0 Harris | | | Bank, U | SD current account | | | |
| | | 1/8/2002 | LUN00C | 138306 | $ (218.49) | USD | $ (218.49) |
| | | 1/8/2002 | LUN00C | 139110 | $ (29.03) | USD | $ (29.03) |
| | | 1/8/2002 | LUN00C | 139433 | $ (14,048.69) | USD | $(14,048.69) |
| | | 1/8/2002 | LUN00C | 139785 | $ (9,145.88) | USD | $ (9,145.88) |
| | | 1/15/2002 | LUN00C | 140228 | $ (9,285.80) | USD | $ (9,285.80) |
| | | 1/31/2002 | LUN00C | 140902 | $ (12,161.15) | USD | $(12,161.15) |
| | | 1/31/2002 | LUN00C | 141199 | $ (10,809.39) | USD | $(10,809.39) |
| | | 2/8/2002 | LUN00C | 141375 | $ (9,045.46) | USD | $ (9,045.46) |
| | | 2/22/2002 | LUN00C | 141839 | $ (10,053.26) | USD | $(10,053.26) |
| | | 2/22/2002 | LUN00C | 142342 | $ (14,625.79) | USD | $(14,625.79) |
| | | 2/28/2002 | LUN00C | 142801 | $ (12,893.04) | USD | $(12,893.04) |
| | | 2/28/2002 | LUN00C | 143391 | $ (11,978.09) | USD | $(11,978.09) |
| | | 3/13/2002 | LUN00C | 143755 | $ (11,017.46) | USD | $(11,017.46) |
| | | 3/22/2002 | LUN00C | 144343 | $ (12,476.53) | USD | $(12,476.53) |
| | | 3/28/2002 | LUN00C | 144271 | $ (136.37) | USD | $ (136.37) |
| | | 3/28/2002 | LUN00C | 144731 | $ (12,930.74) | USD | $(12,930.74) |
| | | 4/11/2002 | LUN00C | 144731* | $ (178.35) | USD | $ (178.35) |
| | | 4/11/2002 | LUN00C | 145237 | $ (13,675.41) | USD | $(13,675.41) |
| | | 4/11/2002 | LUN00C | 145647 | $ (13,786.23) | USD | $(13,786.23) |
| | | 4/19/2002 | LUN00C | 146154 | $ (14,302.51) | USD | $(14,302.51) |
| | | 4/25/2002 | LUN00C | 146833 | $ (13,484.87) | USD | $(13,484.87) |
| | | 5/3/2002 | LUN00C | 147239 | $ (14,185.92) | USD | $(14,185.92) |
| | | 5/10/2002 | LUN00C | 147881 | $ (13,922.56) | USD | $(13,922.56) |
| | | 5/24/2002 | LUN00C | 20001265 | $ (13,275.90) | USD | $(13,275.90) |
| | | 5/24/2002 | LUN00C | 20001269 | $ (13,277.39) | USD | $(13,277.39) |
| | | 5/24/2002 | LUN00C | 2001264 | $ (13,670.38) | USD | $(13,670.38) |
| | | 5/31/2002 | LUN00C | *VOID* | $ 13,275.90 | USD | $ 13,275.90 |
| | | 5/31/2002 | LUN00C | *VOID* | $ 13,277.39 | USD | $ 13,277.39 |
| | | 5/31/2002 | LUN00C | *VOID* | $ 13,670.38 | USD | $ 13,670.38 |
| | | 5/31/2002 | LUN00C | 20001265 | $ (13,103.06) | USD | $(13,103.06) |
| | | 5/31/2002 | LUN00C | 20001269 | $ (13,277.39) | USD | $(13,277.39) |
| | | 5/31/2002 | LUN00C | 20001802 | $ (13,153.72) | USD | $(13,153.72) |
| | | 5/31/2002 | LUN00C | 2001264 | $ (13,670.38) | USD | $(13,670.38) |
| | | 6/6/2002 | LUN00C | 20002000 | $ (48.29) | USD | $ (48.29) |
| | | 6/6/2002 | LUN00C | 20002001 | $ (91.96) | USD | $ (91.96) |
| | | 6/21/2002 | LUN00C | 2002681 | $ (13,695.34) | USD | $(13,695.34) |
| | | 6/21/2002 | LUN00C | 201472 | $ (11,179.84) | USD | $(11,179.84) |
| | | 7/3/2002 | LUN00C | 20003000 | $ (12,381.16) | USD | $(12,381.16) |
| | | 7/11/2002 | LUN00C | 20003477 | $ (13,278.94) | USD | $(13,278.94) |
| | | 7/11/2002 | LUN00C | 20003808 | $ (13,512.99) | USD | -13512.99) |
| | | 7/26/2002 | LUN00C | 2004148 | $ (12,338.78) | USD | $(12,338.78) |
| | | 8/2/2002 | LUN00C | 131004* | $ (1,957.96) | USD | $ (1,957.96) |
| | | 8/2/2002 | LUN00C | 131005* | $ (251.67) | USD | $ (251.67) |

ICG
Accounts Payable Distribution Jou
Current and History Files, After 01
Sessions 000000 to 017715, All Acc
Vendor = LUN00C

| GL Ac | count | Post Dte | Vendor | Invoice | f | Amount in USD | Currency | Amount in orig. Curr. |
|=======|=============|========|======|========|===|=============|========|==============|
| | | 8/2/2002 | LUN00C | 132845 | $ | (251.97) | USD | $ (251.97) |
| | | 8/2/2002 | LUN00C | 132846 | $ | (933.55) | USD | $ (933.55) |
| | | 8/2/2002 | LUN00C | 135935 | $ | (1,353.86) | USD | $ (1,353.86) |
| | | 8/2/2002 | LUN00C | 135936 | $ | (219.51) | USD | $ (219.51) |
| | | 8/2/2002 | LUN00C | 140625* | $ | (1,131.33) | USD | $ (1,131.33) |
| | | 8/2/2002 | LUN00C | 141097 | $ | (2,416.51) | USD | $ (2,416.51) |
| | | 8/2/2002 | LUN00C | 141098* | $ | (1,603.78) | USD | $ (1,603.78) |
| | | 8/2/2002 | LUN00C | 142718 | $ | (2,139.45) | USD | $ (2,139.45) |
| | | 8/2/2002 | LUN00C | 20004063 | $ | (48.29) | USD | $ (48.29) |
| | | 8/2/2002 | LUN00C | 20004629 | $ | (13,662.86) | USD | $(13,662.86) |
| | | 8/2/2002 | LUN00C | 142717 | $ | (3,536.03) | USD | $ (3,536.03) |
| | | 8/8/2002 | LUN00C | 20004913 | $ | (13,226.54) | USD | $(13,226.54) |
| | | 8/8/2002 | LUN00C | 20005353 | $ | (13,592.34) | USD | $(13,592.34) |
| | | 8/16/2002 | LUN00C | 753529 | $ | (26.22) | USD | $ (26.22) |
| | | 8/22/2002 | LUN00C | 20005672 | $ | (14,171.65) | USD | $(14,171.65) |
| | | 8/22/2002 | LUN00C | 20006179 | $ | (7,800.03) | USD | $ (7,800.03) |
| | | 9/6/2002 | LUN00C | 20006553 | $ | (7,768.64) | USD | $ (7,768.64) |
| | | 9/6/2002 | LUN00C | 20006993 | $ | (7,638.84) | USD | $ (7,638.84) |
| | | 9/6/2002 | LUN00C | 20007415 | $ | (7,502.44) | USD | $ (7,502.44) |
| | | 9/20/2002 | LUN00C | 20007796 | $ | (6,664.90) | USD | $ (6,664.90) |
| | | 10/3/2002 | LUN00C | 20008545 | $ | (8,877.66) | USD | $ (8,877.66) |
| | | 10/3/2002 | LUN00C | 201913 | $ | (8,245.38) | USD | $ (8,245.38) |
| | | 10/10/2002 | LUN00C | 20009050 | $ | (8,390.80) | USD | $ (8,390.80) |
| | | 10/17/2002 | LUN00C | 20009402 | $ | (8,251.32) | USD | $ (8,251.32) |
| | | 10/22/2002 | LUN00C | 20009944 | $ | (8,579.12) | USD | $ (8,579.12) |
| | | 10/25/2002 | LUN00C | 20009952 | $ | (382.80) | USD | $ (382.80) |
| | | 10/30/2002 | LUN00C | 20010304 | $ | (8,410.16) | USD | $ (8,410.16) |
| | | 11/5/2002 | LUN00C | 142720 | $ | (1,578.23) | USD | $ (1,578.23) |
| | | 11/5/2002 | LUN00C | 20010379 | $ | (127.60) | USD | $ (127.60) |
| | | 11/7/2002 | LUN00C | 20010834 | $ | (7,996.78) | USD | $ (7,996.78) |
| | | 11/7/2002 | LUN00C | 20011268 | $ | (7,962.24) | USD | $ (7,962.24) |
| | | 11/26/2002 | LUN00C | 20011701 | $ | (8,699.83) | USD | $ (8,699.83) |
| | | 11/26/2002 | LUN00C | 20011986 | $ | (9,535.89) | USD | $ (9,535.89) |
| | | 12/4/2002 | LUN00C | 20012376 | $ | (8,962.14) | USD | $ (8,962.14) |
| | | 12/18/2002 | LUN00C | 20012744 | $ | (8,974.02) | USD | $ (8,974.02) |
| | | 12/18/2002 | LUN00C | 20013005 | $ | (158.63) | USD | $ (158.63) |
| | | 12/18/2002 | LUN00C | 20013406 | $ | (9,388.24) | USD | $ (9,388.24) |
| | | 12/23/2002 | LUN00C | 20013061 | $ | (255.20) | USD | $ (255.20) |
| | | 12/23/2002 | LUN00C | 20013339 | $ | (238.21) | USD | $ (238.21) |
| | | 12/23/2002 | LUN00C | 20013402 | $ | (9,356.85) | USD | -9356.85 |
| | | 12/31/2002 | LUN00C | 20013930 | $ | (9,227.40) | USD | $ (9,227.40) |
| | | 1/8/2003 | LUN00C | 20014022 | $ | (7,607.83) | USD | $ (7,607.83) |
| | | 1/21/2003 | LUN00C | 20014349 | $ | (96.58) | USD | $ (96.58) |
| | | 1/24/2003 | LUN00C | 20014348 | $ | (9,339.79) | USD | $ (9,339.79) |

Lundy

ICG
Accounts Payable Distribution Jou
Current and History Files, After 01
Sessions 000000 to 017715, All Acc
Vendor = LUN00C

| GL Ac | count | Post Dte | Vendor | Invoice | Amount in USD | Currency | Amount in orig. Curr. |
|=======|=============|========|======|========|============|========|============|
| | | 1/24/2003 | LUN00C | 20014698 | $ (9,747.24) | USD | $ (9,747.24) |
| | | 1/30/2003 | LUN00C | 20015116 | $ (9,258.53) | USD | $ (9,258.53) |
| | | 2/6/2003 | LUN00C | 20015396 | $ (8,802.99) | USD | $ (8,802.99) |
| | | 2/12/2003 | LUN00C | 20015524 | $ (48.29) | USD | $ (48.29) |
| | | 2/14/2003 | LUN00C | 20015807 | $ (9,927.47) | USD | $ (9,927.47) |
| | | 2/24/2003 | LUN00C | 20016088 | $ (9,705.34) | USD | $ (9,705.34) |
| | | 2/24/2003 | LUN00C | 20016340 | $ (96.58) | USD | $ (96.58) |
| | | 2/26/2003 | LUN00C | 20016412 | $ (9,441.74) | USD | $ (9,441.74) |
| | | 3/4/2003 | LUN00C | 20016749 | $ (9,133.52) | USD | $ (9,133.52) |
| | | 3/13/2003 | LUN00C | 20017055 | $ (9,353.95) | USD | $ (9,353.95) |
| | | 3/18/2003 | LUN00C | 20017318 | $ (9,947.48) | USD | $ (9,947.48) |
| | | 3/27/2003 | LUN00C | 20017635 | $ (9,486.82) | USD | $ (9,486.82) |
| | | 4/2/2003 | LUN00C | 20017914 | $ (9,488.10) | USD | $ (9,488.10) |
| | | 4/2/2003 | LUN00C | 20017976 | $ (48.29) | USD | $ (48.29) |
| | | 4/15/2003 | LUN00C | 20018147 | $ (9,551.40) | USD | $ (9,551.40) |
| | | 4/15/2003 | LUN00C | 20018559 | $ (10,056.49) | USD | $(10,056.49) |
| | | 4/23/2003 | LUN00C | 20018751 | $ (10,601.59) | USD | $(10,601.59) |
| | | 4/29/2003 | LUN00C | 20018752 | $ (96.58) | USD | $ (96.58) |
| | | 4/30/2003 | LUN00C | 20019016 | $ (10,183.10) | USD | $(10,183.10) |
| | | 4/30/2003 | LUN00C | 20019313 | $ (10,377.14) | USD | $(10,377.14) |
| | | 5/14/2003 | LUN00C | 20019530 | $ (9,827.49) | USD | $ (9,827.49) |
| | | 5/22/2003 | LUN00C | 20019833 | $ (9,242.00) | USD | $ (9,242.00) |
| | | 5/30/2003 | LUN00C | 20020130 | $ (9,523.50) | USD | $ (9,523.50) |
| | | 5/30/2003 | LUN00C | 20020288 | $ (240.32) | USD | $ (240.32) |
| | | 6/4/2003 | LUN00C | 20020394 | $ (9,746.00) | USD | $ (9,746.00) |
| | | 6/18/2003 | LUN00C | 20020634 | $ (8,423.50) | USD | $ (8,423.50) |
| | | 6/18/2003 | LUN00C | 20020996 | $ (10,415.88) | USD | $(10,415.88) |
| | | 7/3/2003 | LUN00C | 20021228 | $ (9,532.91) | USD | $ (9,532.91) |
| | | 7/3/2003 | LUN00C | 20021490 | $ (9,868.95) | USD | $ (9,868.95) |
| | | 7/24/2003 | LUN00C | 20021756 | $ (9,505.36) | USD | $ (9,505.36) |
| | | 7/24/2003 | LUN00C | 20021988 | $ (7,449.99) | USD | $ (7,449.99) |
| | | 7/24/2003 | LUN00C | 20022273 | $ (9,318.93) | USD | $ (9,318.93) |
| | | 7/31/2003 | LUN00C | 20022757 | $ (9,554.99) | USD | $ (9,554.99) |
| | | 7/31/2003 | LUN00C | 20022876 | $ (9,785.60) | USD | $ (9,785.60) |
| | | 8/6/2003 | LUN00C | 20022804 | $ (821.15) | USD | $ (821.15) |
| | | 8/14/2003 | LUN00C | 20023118 | $ (9,517.16) | USD | $ (9,517.16) |
| | | 8/27/2003 | LUN00C | 20023082 | $ (763.90) | USD | $ (763.90) |
| | | 8/27/2003 | LUN00C | 20023418 | $ (6,879.86) | USD | $ (6,879.86) |
| | | 8/27/2003 | LUN00C | 20023639 | $ (8,594.42) | USD | -8594.42 |
| | | 9/5/2003 | LUN00C | 200239851 | $ (8,774.90) | USD | $ (8,774.90) |
| | | 9/18/2003 | LUN00C | 20024034 | $ (9,263.32) | USD | $ (9,263.32) |
| | | 9/24/2003 | LUN00C | 20024282 | $ (7,732.56) | USD | $ (7,732.56) |
| | | 9/30/2003 | LUN00C | 20024564 | $ (9,562.08) | USD | $ (9,562.08) |
| | | 9/30/2003 | LUN00C | 20024851 | $ (9,466.38) | USD | $ (9,466.38) |

Lundy

ICG
Accounts Payable Distribution Jou
Current and History Files, After 01
Sessions 000000 to 017715, All Acc
Vendor = LUN00C

| GL Ac | count | Post Dte | Vendor | Invoice | Amount in USD | Currency | Amount in orig. Curr. |
|=====|==========|========|======|========|============|========|==============|
| | | 10/9/2003 | LUN00C | 20025097 | $ (9,262.00) | USD | $ (9,262.00) |
| | | 10/16/2003 | LUN00C | 20025374 | $ (9,650.52) | USD | $ (9,650.52) |
| | | 10/30/2003 | LUN00C | 20025594 | $ (9,585.40) | USD | $ (9,585.40) |
| | | 10/30/2003 | LUN00C | 20025690 | $ (144.87) | USD | $ (144.87) |
| | | 10/30/2003 | LUN00C | 20025877 | $ (12,024.29) | USD | $(12,024.29) |
| | | 11/6/2003 | LUN00C | 20026107 | $ (10,005.45) | USD | $(10,005.45) |
| | | 11/13/2003 | LUN00C | 20026351 | $ (10,343.29) | USD | $(10,343.29) |
| | | 11/26/2003 | LUN00C | 20026658 | $ (96.58) | USD | $ (96.58) |
| | | 12/4/2003 | LUN00C | 20026657 | $ (12,541.37) | USD | $(12,541.37) |
| | | 12/4/2003 | LUN00C | 20026918 | $ (10,549.24) | USD | $(10,549.24) |
| | | 12/4/2003 | LUN00C | 20027295 | $ (12,317.75) | USD | $(12,317.75) |
| | | 12/4/2003 | LUN00C | 20027349 | $ (144.87) | USD | $ (144.87) |
| | | 12/4/2003 | LUN00C | 20027489 | $ (11,001.50) | USD | $(11,001.50) |
| | | 12/23/2003 | LUN00C | 20027738 | $ (11,232.15) | USD | $(11,232.15) |
| | | 12/30/2003 | LUN00C | 20028001 | $ (11,522.61) | USD | $(11,522.61) |
| | | 12/30/2003 | LUN00C | 20028289 | $ (13,866.92) | USD | $(13,866.92) |
| | | 12/30/2003 | LUN00C | 20028458 | $ (9,259.55) | USD | $ (9,259.55) |
| | | 1/9/2004 | LUN00C | 20028496 | $ (54.78) | USD | $ (54.78) |
| | | 1/9/2004 | LUN00C | 20028681 | $ (9,523.60) | USD | $ (9,523.60) |

------------
$ (1,134,954.47)

**International Casings Group**
Vendor

**Premium Standard Farm**        Clinton

**Aux supplies**        2004

| Supplier Number | Document Number | Purchase Order | Invoice Number | Invoice Date | G/L Date | Gross Amount |
|---|---|---|---|---|---|---|
| 501564 | 4006522 | | 20030758 | 2/27/2004 | 5/21/2004 | 96.58 |
| 501564 | 4005812 | | 20031638 | 3/22/2004 | 4/13/2004 | 164.58 |
| 501564 | 4006415 | | 20032340 | 4/12/2004 | 5/17/2004 | 96.58 |
| 501564 | 4007137 | | 20033930 | 5/27/2004 | 6/18/2004 | 96.58 |
| 501564 | 4000078 | | 20035315* | 7/2/2004 | 8/6/2004 | -1,087.49 |
| 501564 | 4000081 | | 20035506* | 7/9/2004 | 8/6/2004 | -1,418.45 |
| 501564 | 4000079 | | 20035931* | 7/23/2004 | 8/6/2004 | -1,202.81 |
| 501564 | 4000080 | | 20035930* | 7/23/2004 | 8/6/2004 | -1,321.29 |
| 501564 | 4008406 | | 20036241 | 7/30/2004 | 8/12/2004 | 96.58 |
| 501564 | 4010004 | | 20039144 | 10/26/2004 | 11/5/2004 | 255.2 |

**Total**

**-4223.94**

**Runners**        2004

| Supplier Number | Document Number | Purchase Order | Invoice Number | Invoice Date | G/L Date | Gross Amount |
|---|---|---|---|---|---|---|
| 501564 | 4004345 | 04052020 | 20028888 | 1/9/2004 | 1/30/2004 | 10,831.88 |
| 501564 | 4004346 | 04052021 | 20029179 | 1/16/2004 | 1/30/2004 | 10,393.04 |
| 501564 | 4004363 | 04052027 | 20029487 | 1/24/2004 | 1/30/2004 | 10,619.28 |
| 501564 | 4004404 | 04052034 | 20029692 | 1/30/2004 | 2/13/2004 | 11,532.44 |
| 501564 | 4004418 | 04052042 | 20029949 | 2/6/2004 | 2/24/2004 | 11,642.47 |
| 501564 | 4004420 | 04052043 | 20030224 | 2/13/2004 | 2/24/2004 | 12,644.59 |
| 501564 | 4005301 | 04052055 | 20030760 | 2/27/2004 | 3/16/2004 | 11,894.99 |
| 501564 | 4005302 | 04052058 | 20031012 | 3/5/2004 | 3/16/2004 | 11,756.34 |
| 501564 | 4005440 | 04052076 | 20031292 | 3/12/2004 | 3/24/2004 | 12,413.64 |
| 501564 | 4005567 | 04052081 | 20031576 | 3/19/2004 | 3/31/2004 | 11,147.60 |
| 501564 | 4005566 | 04052084 | 20031876 | 3/29/2004 | 3/31/2004 | 11,862.46 |
| 501564 | 4005795 | 04052090 | 20032075 | 4/2/2004 | 4/13/2004 | 13,079.52 |
| 501564 | 4006033 | 04052097 | 20032339 | 4/12/2004 | 4/22/2004 | 13,349.19 |
| 501564 | 4006032 | 04052098 | 20032557 | 4/16/2004 | 4/22/2004 | 12,956.21 |
| 501564 | 4006085 | 04052101 | 20032776 | 4/23/2004 | 5/4/2004 | 12,738.60 |
| 501564 | 4006272 | 04052108 | 20033093 | 5/3/2004 | 5/11/2004 | 12,129.71 |
| 501564 | 4006689 | 04052120 | 20033299 | 5/7/2004 | 5/25/2004 | 11,866.05 |
| 501564 | 4006688 | 04052121 | 20033560 | 5/17/2004 | 5/25/2004 | 11,896.29 |
| 501564 | 4006790 | 04052124 | 20033832 | 5/22/2004 | 6/2/2004 | 11,772.81 |
| 501564 | 4006971 | 04052130 | 20034016 | 6/1/2004 | 6/9/2004 | 12,218.24 |
| 501564 | 4007133 | 04052134 | 20034227 | 6/7/2004 | 6/17/2004 | 11,053.37 |
| 501564 | 4007297 | 04052138 | 20034549 | 6/14/2004 | 6/24/2004 | 12,662.10 |
| 501564 | 4007465 | 04052150 | 20034802 | 6/21/2004 | 7/8/2004 | 12,483.24 |
| 501564 | 4007464 | 04052153 | 20035057 | 6/25/2004 | 7/8/2004 | 12,495.45 |
| 501564 | 4007824 | 04052155 | 20035315 | 7/2/2004 | 7/19/2004 | 10,253.43 |
| 501564 | 4007983 | 04052168 | 20035506 | 7/9/2004 | 7/28/2004 | 13,373.91 |
| 501564 | 4007984 | 04052169 | 20035930 | 7/23/2004 | 7/28/2004 | 12,457.83 |
| 501564 | 4007985 | 04052170 | 20035931 | 7/23/2004 | 7/28/2004 | 11,340.78 |
| 501564 | 4008344 | 04052175 | 20036274 | 8/2/2004 | 8/6/2004 | 10,814.58 |
| 501564 | 4008448 | 04052178 | 20036529 | 8/6/2004 | 8/12/2004 | 11,519.31 |
| 501564 | 4008526 | 04052182 | 20036783 | 8/13/2004 | 8/24/2004 | 13,032.51 |
| 501564 | 4008809 | 04052189 | 20037025 | 8/20/2004 | 8/31/2004 | 13,620.43 |
| 501564 | 4008849 | 04052193 | 20037287 | 8/27/2003 | 9/2/2004 | 14,697.71 |
| 501564 | 4009041 | 04052198 | 20037514 | 9/3/2004 | 9/15/2004 | 15,169.51 |
| 501564 | 4009042 | 04052199 | 20037732 | 9/11/2004 | 9/15/2004 | 15,424.75 |
| 501564 | 4009271 | 04052206 | 20037793 | 9/17/2004 | 9/29/2004 | 15,954.77 |
| 501564 | 4009272 | 04052208 | 20038072 | 9/24/2004 | 9/29/2004 | 18,401.43 |
| 501564 | 4009426 | 04052214 | 20038362 | 10/1/2004 | 10/8/2004 | 15,804.60 |
| 501564 | 4009579 | 04052218 | 20038598 | 10/8/2004 | 10/19/2004 | 15,460.25 |
| 501564 | 4009732 | 04052222 | 20038844 | 10/15/2004 | 10/26/2004 | 15,533.74 |
| 501564 | 4009928 | 04052225 | 20039049 | 10/22/2004 | 10/29/2004 | 15,755.61 |
| 501564 | 4010002 | 04052228 | 20039283 | 10/29/2004 | 11/5/2004 | 16,238.25 |
| 501564 | 4010205 | 04052237 | 20039570 | 11/5/2004 | 11/12/2004 | 15,784.13 |
| 501564 | 4010365 | 04052238 | 20039856 | 11/12/2004 | 11/18/2004 | 15,835.88 |
| 501564 | 4010400 | 04052241 | 10079758 | 11/15/2004 | 11/19/2004 | 14,941.30 |

**Total**

**588,854.22**

# EXHIBIT 10

-----Original Message-----
**From:**  Tom Sanecki
**Sent:**  Thursday, June 20, 2002 3:15 PM
**To:**   Kent Pummill (E-mail)
**Cc:**   Bryan Schultz; Eric Svendsen
**Subject:**   Contracts

Attached is the drafts for the Milan and Clinton contracts. The attachments are the payment schedules and the Clinton facility description exhibit you have copies of these.  Let me know your thoughts.

<< File: PSF Milan Contract.DOC >>  << File: PSF Clinton Contract.DOC >>

# EXHIBIT 11

**From:** Pummill, Kent [Kent.Pummill@psfarms.com]
**Sent:** Tuesday, April 27, 2004 2:03 PM
**To:** Tom Sanecki
**Cc:** Bryan Schultz; Elliot Simon; Eric Svendsen
**Subject:** RE: Milan and Clinton Contracts

Will do.   Thank you.   Kent

-----Original Message-----
**From:** Tom Sanecki [mailto:tsanecki@casings.com]
**Sent:** Tuesday, April 27, 2004 1:46 PM
**To:** Pummill, Kent
**Cc:** Bryan Schultz; Elliot Simon; Eric Svendsen
**Subject:** Milan and Clinton Contracts

I have sent you 4 copies of each contract.  I have initialed and signed each. Please have Bo sign and initial and return 2 copies to ICG.

I put the effective date of the $0.025 reduction at Clinton for 05/03/04.  ICG will get the blow pipe replaced ASAP after receiving the signed contracts. PSF will maintain the blow system and at the end of the new contract it will become PSF's property.

PSF will pay for the electrical room upgrades at Clinton.

Thanks for your help.

# EXHIBIT 12

**From:**    Pummill, Kent [Kent.Pummill@psfarms.com]

**Sent:**    Monday, June 07, 2004 10:04 AM

**To:**      Tom Sanecki

**Subject:** Contracts

Finally got them back from Legal and Bo Manly.

Every thing looks fine except on 2 G.    Jerry wants to have 2G end with "ADA".    and mark through the following.

" and will defend and indemnify ICG against any claims by Premium employees unless due to gross negligence by ICG employees or their agents."

He says this is covered in 10.

Bo,  is adamant about not going 5 years.     He turned 180 degrees on me.   He wants just 3.    If you can agree with me on 3 years, then I will mark through and initial the "2G" section,  and change and initial the term to 3 years,  and get Bo to sign and send them on their way.

I thought we were home free;  we are real close.   Will this work for you?   I will take another penny off the price for Clinton to get this signed and off my desk.    I think you and I are both tired and want this off our desks.

Let me know.

Kent

# EXHIBIT 13



**Premium Standard Farms®**

805 Pennsylvania Avenue, Suite 200
Kansas City, Missouri 64105-1307

Phone: (816) 472-7675
Fax:   (816) 843-1450

November 17, 2004

Mr. Eric Svendsen
President
International Casings Group, Inc.
4420 South Wolcott Avenue
Chicago, Il 60609

Re: Casings at Milan, MO, and Clinton, NC

Dear Mr. Svendsen

In May of 2002, we exchanged termination letters. You sent the termination letter
relating to the agreement for Clinton, North Carolina. We sent the letter terminating the
contract that pertained to our Milan, Missouri facility. Since May of 2002, we have been
operating without a contract at either location.

This letter is to serve notification that we terminating our business relationship. We
request that you remove your casing equipment at Milan, MO starting on 1/3/05, then
remove your equipment at Clinton, NC starting on 1/10/05. Calvin Held will be your
contact person relating to questions about the extraction process. His number is 1-800-
414-1106 ext. 3000.

We would like to make this transition as smooth as possible, if we can help in anyway,
please let us know.

Sincerely,

Robert W. Manly
President

Cc:
Calvin Held
Kent Pummill
Jerry Schulte