IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL CASINGS GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 04-1081-CV-W-NKL |
| PREMIUM STANDARD FARMS, INC., | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Pending before the Court is International Casings Group's ("ICG") Motion to Dismiss the Counterclaim of Premium Standard Farms ("PSF") [Doc. # 54]. Also pending is a Motion to Dismiss PSF's Counterclaim that was filed by Van Hessen b.v. ("Van Hessen") [Doc. # 79]. ICG is a wholly owned subsidiary of Van Hessen. For the reasons set forth below, the Court grants in part and denies in part ICG's and Van Hessen's Motions.

Also pending before the Court is PSF's Motion for Extension of Time to Designate Experts [Doc. # 82]. For the reasons set forth below, the Court grants in part PSF's Motion.

**I.  Background**

PSF is a pork producer that has sold its hog casings to ICG for over six years. The two PSF facilities that supply their hog casings to ICG are located in Milan, Missouri

1

("Milan facility"), and Clinton, North Carolina ("Clinton facility"). After PSF attempted to terminate its contracts with ICG, ICG moved this Court for a preliminary injunction to compel PSF to continue to provide PSF's output casings to ICG. On February 9, 2005, the Court granted ICG's motion for a preliminary injunction [Doc. # 32].

After the Court entered its Preliminary Injunction Order, PSF filed an Answer to ICG's Complaint as well as a Counterclaim against ICG and its parents company, Van Hessen. In its Counterclaim, PSF alleges that ICG and Van Hessen coerced and threatened Standard Casing Company ("Standard") with litigation if Standard continued to compete for the hog casing output at the Milan and Clinton facilities. PSF alleges that Standard eventually caved in to ICG's pressure and as a result, the price of PSF's hog casings was depressed. PSF alleges that Standard's cooperation with ICG forced it into an untenable negotiating position with both parties and the effect was to stifle competition for PSF's casings. PSF alleges in its Counterclaim that ICG and Van Hessen's conduct violated section 1 of the Sherman Act, 15 U.S.C. § 1. PSF did not file suit against Standard.

## II.  ICG's Motion to Dismiss [Doc. # 54]

### A.  Motion to Dismiss

Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 1. The Eighth Circuit has identified three essential elements for an antitrust claim under section 1 and they are: (1) that there was an agreement,

conspiracy, or combination among the defendants in restraint of trade; (2) the plaintiff was injured as a direct and proximate result of the antitrust conduct; and (3) the plaintiff's damages are capable of reasonable ascertainment and are not speculative or conjectural. *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 883-84 (8th Cir. 1978). ICG attacks PSF's Counterclaim on all of the elements listed above.

### 1. Classification of PSF's Claim

The parties dispute whether PSF's anti-trust claim should be categorized as a *per se* violation of the Sherman Act or whether it should be analyzed under the Rule of Reason.[1]

Some conduct is "presumed to restrain competition in violation of the Sherman Act. The strict *per se* rules of modern antitrust law establish a conclusive presumption that a particular kind of action has improper anticompetitive effects . . . ." 10A Fletcher Cyclopedia of Private Corp. § 4982.05 (Nov. 2004). The test for determining whether conduct is a *per se* violation of the antitrust laws "is whether the practice facially appears to be one that would always tend to restrict competition and decrease output, rather than one designed to increase economic efficiency and render markets more, rather than less, competitive. . . . [The *per se* rule] applies only to those cases where the business practice in question is one which, on its face, has no purpose except stifling trade." *Id.* Examples

---

[1]If a claim is not analyzed under the *per se* rule, then it is analyzed under the Rule of Reason, which provides that only those contracts that unreasonably restrain trade will be held to violate the Sherman Act. 10A Fletcher Cyclopedia of Private Corp. § 4982 (Nov. 2004) (overview of Rule of Reason).

3

of *per se* violations include, but are not limited to, price-fixing, bid rigging, division of markets, and limitation of production. *Id.*

PSF argues that it has asserted a *per se* violation of the Sherman Act because it alleges that horizontal competitors (ICG and Standard) colluded to depress prices paid to PSF. In its Reply, ICG seems to suggest that such a scheme would not be a *per se* violation because the parties did not agree on the specific amount of the price to be fixed.[2] In *United States v. Socony-Vacuum Oil Co.*, the Supreme Court rejected that approach and held that an agreement among competitors to manipulate prices was facially unlawful under the Sherman Act, even though the competitors did not directly agree on the prices to be maintained. 310 U.S. 150 (1940). Instead, the Court explained that "[u]nder the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal *per se*." *Id.* at 223. *See also Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643 (1980); *National Society of Professional Engineers v. United States*, 435 U.S. 679 (1978). Thus, the parties need not agree on a definite price for their conduct to violate the Sherman Act; instead, they must merely collude to manipulate the prices. PSF has averred such an allegation against ICG in its Counterclaim and, therefore, its claim, if proven, can constitute a *per se* violation of the Sherman Act.

---

[2]ICG wrote, "Second, horizontal price fixing requires that competitors agree that the prices will be lowered or increased . . . . But there is no allegation of an agreement on prices." *See* ICG Reply [Doc. # 75] at p. 10.

In addition to the alleged price-fixing scheme, PSF also alleges in its Counterclaim that ICG and Standard formed a wrongful agreement not to compete for PSF's hog casings. Just as price-fixing can be a *per se* violation of the Sherman Act, agreements not to compete are also a *per se* violation of the Sherman Act because they inherently stifle competition. In *Palmer v. BRG of Georgia, Inc.*, the Supreme Court held that an agreement between two bar review course providers not to compete in the Georgia market was a *per se* violation of the Sherman Act because the absence of one competitor enabled the other company to raise its prices. 498 U.S. 46 (1990). In finding that the agreement was tantamount to a *per se* violation of the Sherman Act, the Court stated:

> [the two bar review providers] had previously competed in the Georgia market; under their allocation agreement, [one provider] received that market, while [the other provider] received the remainder of the United States. Each agreed not to compete in each other's territories. Such agreements are anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other. Thus, the [] agreement between [the two providers] was unlawful on its face.

*Id.* at 49-50. In its Counterclaim, PSF alleges similar conduct on the part of ICG and Standard; that is, that they allegedly formed an agreement in which Standard acquiesced not to compete for PSF's casings output. Such an agreement had the effect of narrowing the scope of potential buyers in the market for PSF's output and thereby diminished competition for the goods. Thus, the agreement, if true, can constitute a facial violation of the Sherman Act.

Therefore, the Court finds that the facts alleged in PSF's Counterclaim can

5

constitute a *per se* violation of the Sherman Act.

### 2. *Pleading Standard*

In its Motion, ICG appears to argue that there is a higher pleading standard for antitrust claims. However, it is clear that the notice pleading standard set forth in Fed. R. Civ. P. 8 still applies to private antitrust claims. *See Fusco v. Xerox Corp.*, 676 F.2d 332, 337 n. 7 (8th Cir. 1982) ("The liberal rules of pleading embodied in [Rule 8] are as applicable to claims in antitrust . . . cases as they are in any other case. All that is required is a short, plain statement of facts sufficient to give the defendant fair notice of the basis of the claim."); *Baxley-DeLamar Monuments, Inc. v. Am. Cemetery Ass'n*, 843 F.2d 1154, 1156 (8th Cir. 1988); *Five Smiths, Inc. v. NFL Players Ass'n*, 788 F. Supp. 1042 (D. Minn. 1992).

Nonetheless, ICG is correct that allegations of conspiracy must be pleaded with a higher degree of specificity. ICG cites to *Five Smiths*, which states: "However, general allegations of conspiracy, without a statement of 'the facts constituting the conspiracy, its object and accomplishment' are inadequate to state a cause of action." *Five Smiths*, 788 F. Supp. at 1048 (quoting *Baxley-DeLamar*, 843 F.2d at 1156). In *Five Smiths*, the court dismissed the antitrust complaint against the players' association because the plaintiffs did not assert "specific facts that indicate what acts the [association] took to fix prices, what agreements were entered into, with whom such agreements were made or how the goals of the conspiracy were accomplished." *Id.*

In the instant case, PSF has pleaded sufficient facts to state an antitrust claim. PSF

has averred that ICG and Van Hessen intimidated and threatened Standard, Standard acquiesced in ICG's plan and agreed to participate in price manipulations against PSF, and all of the alleged members of the conspiracy executed their plan. This is sufficient to allege a conspiracy claim. ICG, through discovery, can test PSF's factual allegations and move for summary judgment if appropriate. However, PSF has satisfied the pleading standard.

### 3. *The Existence of an Agreement*

ICG also challenges PSF's Counterclaim on the basis that ICG's and Van Hessen's conduct, even if it is true, constituted unilateral conduct that cannot form the basis of an antitrust claim. According to ICG's argument, it and Van Hessen are in a corporate parent-subsidiary relationship and they cannot be held to have formed a conspiracy among themselves because they have identical economic interests. Moreover, ICG argues that ICG's and Van Hessen's alleged attempts to coerce Standard were unilateral in nature and cannot be the basis of an antitrust claim.

ICG's arguments do not address the allegations in PSF's Counterclaim. PSF clearly alleges that ICG and Van Hessen undertook a campaign of intimidation to convince Standard to take a certain course of action. PSF then alleges that Standard agreed to the plan and engaged in a conspiracy with ICG. The factual allegations in the Counterclaim do not merely allege unilateral conduct; instead, they allege an agreement that sprang from coercive unilateral conduct, but this is inconsequential under antitrust law. *See Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1163 (7th Cir. 1987) ("[A]n

7

agreement procured by threats is still an agreement for purposes of [the Sherman Act]. . . . A conspiracy is not less sinister because some of its members are intimidated, rather than bribed, into joining it.") (citations omitted). Thus, the genesis of the conspiracy is inapposite--what matters is that a conspiracy existed and PSF clearly alleges that an agreement did exist between ICG, Van Hessen, and Standard.

### 4. *The Existence of a Relevant Market*

ICG attacks PSF's Counterclaim for its failure to identify a relevant market that was impacted by the alleged antitrust conduct. ICG's argument presupposes that PSF's antitrust claim is governed by the Rule of Reason and not evaluated as a *per se* violation. When a party asserts a *per se* violation of the antitrust laws, there is no need for the party to prove the existence of a relevant market. *See TV Signal Co. of Aberdeen v. American Telephone & Telegraph*, 617 F.2d 1302, 1309 at n. 8 (8th Cir. 1980) ("No proof of relevant market is required under section 1 [of the Sherman Act] where a *per se* violation is established.") (citing *United States v. Topco Assocs., Inc.*, 405 U.S. 596 (1972)). *See also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 986 (9th Cir. 2000); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 188-89 (S.D. N.Y. 2000). Therefore, because PSF has represented that it is asserting a *per se* violation of the antitrust laws, it does not need to establish the existence of a relevant market.

ICG proffers the *Double D* case as authority to the contrary, but *Double D* was not a case involving a *per se* violation of the Sherman Act; instead, it was governed by the Rule of Reason. *See Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554,

8

558 ("The district court concluded under a liberal construction of the factual circumstances pleaded, Double D failed to plead circumstances under which it could prove a *per se* antitrust violation. We agree."). Thus, the language from *Double D* cited by ICG is inapplicable to the Court's analysis of PSF's Counterclaim.

### 5. *Causation*

ICG next argues that PSF cannot demonstrate that the anti-competitive conduct alleged caused PSF damage. According to ICG, PSF suffered harm because it agreed to maintain the status quo of its output contracts pending the outcome of the Court's resolution of the preliminary injunction issue and because the Court found in favor of ICG on the issue of the preliminary injunction. ICG asserts that, as a matter of law, PSF could not sell its casing output to Standard because of PSF's contract with ICG. Therefore, PSF cannot show that there is a causal link between the alleged antitrust activity and the price which PSF received for its casings. This motion to dismiss, however, is not the vehicle to test the merits of ICG's contract claim. PSF has alleged that it was harmed as a result of the conspiracy between ICG, Van Hessen and Standard. Whether PSF can prove its antitrust claim will be left for another day.

### 6. *Type of Injury*

Finally, ICG argues that dismissal is appropriate because PSF has not alleged an injury that is protected by the Sherman Act. In support of its argument, ICG offers the familiar antitrust maxim that "the antitrust laws were passed for the protection of *competition*, not *competitors*." *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 344 (8th

9

Cir. 1995) (quotation omitted).  ICG argues that PSF's alleged injury is so narrow in scope that it could not have impacted the general market and that the antitrust laws were not intended to work for the benefit of an individual entity.

However, as PSF points out in its Opposition, PSF and ICG are not in a competitive relationship--they are buyers and sellers. The court in *Knevelbaard* recognized this distinction when it wrote, "cases that involved claims by competitors" were in "a category most different from that of claims between buyers and sellers" and "[w]hen horizontal price fixing causes . . . sellers[] to receive less than the prices that would prevail in a market free of the unlawful trade restraint, antitrust injury occurs." 232 F.3d at 988.  This is exactly the scenario that PSF alleges in its Counterclaim.

Moreover, the cases cited by ICG are distinguishable.  *Bathke* involved a predatory pricing claim that was filed under section 2 of the Sherman Act and the Robinson-Patman Price Discrimination Act.  64 F.3d at 344.  ICG again cites to dicta in the *Double D* opinion, but that language occurs in the context of the plaintiff's failure to allege a relevant market under a Rule of Reason analysis.  It did not relate to the scope of injuries protected by section 1 of the Sherman Act.  136 F.3d at 561.  Finally, ICG cites *Anheuser-Busch, Inc. v. G.T. Britts Distributing, Inc.*, 44 F. Supp. 2d 172 (N.D. N.Y. 1999) in support of its argument, but that is also a case filed under the Clayton Act and the Robinson-Patman Price Discrimination Act.  Thus, none of the cases offered by ICG in support of its argument concern a *per se* antitrust violation in the context of a claim that was filed under section 1 of the Sherman Act.

10

Given the stage of these proceedings and the current record, the Court denies the Motions to Dismiss filed by ICG and Van Hessen.

### B. Motion to Strike

ICG also moves to strike PSF's demand for punitive damages contained in paragraph 30 of the Counterclaim. It does not appear that PSF opposes ICG's request. Therefore, the Court will strike the punitive damage language contained in paragraph 30 of PSF's Counterclaim.

### C. Motion to Sever

ICG moves to sever PSF's Counterclaim in the event that the Court denies its Motion to Dismiss. The Court agrees that PSF's counterclaim should be severed. If ICG is successful on the merits of its contract claim against PSF, then PSF cannot succeed on its antitrust claim. The Court has already concluded that it is likely that PSF will be successful on its contract claim. Therefore, PSF's counterclaim is severed, stayed and all deadlines concerning the counterclaim stricken. Once the contract dispute between ICG and PSF is resolved, a new scheduling order will be entered to address PSF's antitrust counterclaim.

## III. PSF's Motion for Extension of Time to Designate Experts [Doc. # 82]

On May 24, 2005, the Court entered a Second Amended Scheduling Order [Doc. # 65] and advised the parties that it would not grant any further extensions of the deadlines contained therein. *See* Minute Sheet [Doc. # 64]. Under the Second Amended Scheduling Order, ICG must designate its expert by August 1, PSF must designate its

11

expert by August 31, and the depositions of all expert witnesses must be completed by September 30. *See* Doc. # 65 at ¶ C(2). The dispositive motion deadline is October 31 and the trial is scheduled for April 17, 2006.

Despite the Court's admonition to the contrary, PSF now moves to extend the time for designating expert witnesses and ICG opposes that motion. According to PSF's Motion, the parties informally agreed to extend the expert designation deadlines by 15 days. PSF requests that the Court extend the expert designation deadlines thirty days from the parties' informally agreed upon dates. Thus, PSF requests that ICG's expert designation occur by September 15 and its expert designation occur by October 15.

Because the Court has had this issue under advisement for an extended time and not provided guidance to the parties, the Motion for Extension is granted as follows: ICG's expert designation to occur by September 15, and PSF's expert designation to occur by October 15. The dispositive motion deadline will be moved to November 30. Any further extensions of time will require the Court to strike the trial date and move it further into 2006. Therefore, the parties will not be permitted any additional extensions of time, including extensions of time related to the briefing schedule for the dispositive motions. Neither party shall even file a motion to extend the dispositive motion deadline or the briefing schedule for the dispositive motions.

**IV. Conclusion**

Accordingly, it is hereby ORDERED that

(1)   ICG's Motion to Dismiss [Doc. # 54] and Van Hessen's Motion to Dismiss

[Doc. # 79] are granted in part and denied in part as follows:

        (A)     Motion to Dismiss PSF's Counterclaim is DENIED;

        (B)     Motion to Strike the Punitive Damage Demand in paragraph 30 of PSF's Counterclaim is GRANTED; and

        (C)     Motion to Sever PSF's Counterclaim is GRANTED; and

(2)     PSF's Motion for Extension of Time to Designate Experts [Doc. # 82] is GRANTED. The Court will enter a Third Amended Scheduling Order in accordance with the deadlines set forth herein.

**(3)     Neither party shall file a motion to extend the dispositive motion deadline or the briefing schedule for the dispositive motions.**

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: September 6, 2005
Kansas City, Missouri

14